Danny James ISHMAEL, Appellant,

v.

The STATE of Texas, State.

No. 2–84–144–CR.

Court of Appeals of Texas,
Fort Worth.

April 10, 1985.

Gilfeather, Parker & Griffin, Pete Gilfeather, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Darrell G. Adkerson, Asst., Fort Worth, for State.

Before FENDER, C.J., and BURDOCK, J.

## OPINION

FENDER, Chief Justice.

This is an appeal from a conviction for the offense of involuntary manslaughter where, upon a showing of two prior felony convictions, appellant was assessed a life term by a jury. Appellant raises twelve grounds of error.

We affirm.

In his first ground of error, appellant claims the evidence was insufficient to support the verdict.

■ Appellant was convicted upon circumstantial evidence. In reviewing the sufficiency of the evidence in a circumstantial evidence case, we must view the evidence in the light most favorable to the verdict and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App.1984); *Wilson v. State*, 654 S.W.2d 465, 471 (Tex.Crim.App.1983) (opinion on rehearing). A conviction cannot be sustained if the evidence leaves any reasonable doubt as to the guilt of the accused. *Jackson v. Virginia*, 443 U.S. 307, 317–18, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1974). Thus, it follows that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State*, 673 S.W.2d 190, 195 (Tex. Crim.App.1984); *Wilson*, 654 S.W.2d at 471; *Williams v. State*, 631 S.W.2d 171, 173 (Tex.Crim.App.1982).

■ In order to address this ground of error, a review of the evidence is necessary.

On the afternoon of May 6, 1983, appellant and one Rance Miller were imbibing at the "Nude Connection" (a dancing club). They appeared to be intoxicated and enjoyed harassing the dancers. Gary Feemster, the bartender, asked them to behave, but they again bothered the dancers. Feemster asked them to behave a second time and they complied. Gary Feemster's brother, Joe, appeared for work and was apparently informed of the situation. Eventually, Joe Feemster had to ask appellant and his companion to leave the establishment, and escorted them outside.

Gary Feemster left the club and, while walking to his car, he saw appellant in a car. Appellant told Gary he was going to return and "blow his f_____ head off." Joe Feemster came outside and appellant said to him, "I'm going to kill you."

About half an hour later, Tina Williams, an occupant of the "Nude Connection" building, was hit by a metallic slug which was fired through the side door while the door was closed. She died as a result. Three metal fragments were found in her body.

A police officer testified that he found numerous metal or lead fragments at the scene of the crime and he opined that the slug could have caused the deceased's death. The Tarrant County Medical Examiner confirmed that it was the cause of death. The police officer further testified that a shotgun could have been used in the commission of the crime.

Larry Gene Burdette testified that he was at the home of Rance Miller at about dusk on the night Tina Williams was killed. He saw Rance and appellant drive up in a

car from which appellant exited with a shotgun in his hands. Appellant then stated that he had been thrown out of a bar by the collar, that nobody could do that to him, and that he had gotten a gun, returned to the bar, and shot the man who threw him out. Appellant gave Burdette the gun and told him to dispose of it. Burdette further testified that Rance Miller appeared frightened and stated the gun had discharged in the car.

We hold that the evidence was sufficient to support the verdict of involuntary manslaughter. The State has proved the case beyond a reasonable doubt and to a moral certainty, and we hold that the circumstances excluded every other reasonable hypothesis except the appellant's guilt. The appellant's first ground of error is overruled.

In his second ground of error, the appellant complains that the evidence was insufficient to support the verdict in that the prosecution used allegedly perjured testimony to show that the grand jury was diligent in trying to ascertain the identity of the person who the appellant intended to kill.

The evidence presented at trial showed that the appellant had made threats to kill both the bar owner and manager after appellant had been thrown out of the bar. Approximately half an hour later, appellant allegedly returned to the bar and fired a shotgun slug through a closed door of the bar, killing Tina Williams.

The appellant was indicted for murder under TEX.PENAL CODE ANN. sec. 19.-02(a)(2) (Vernon 1974) which reads:

(a) A person commits an offense if he:
...
    (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

*Id.*

The indictment was quashed for reasons unrelated to this ground of error and the appellant was re-indicted by a different grand jury. The new indictment alleged that the appellant:

did then and there intentionally *with the intent to cause serious bodily injury to a person or persons unknown to the grand jury* commit an act clearly dangerous to human life, namely, knowing that persons were inside the Nude Connection nightclub ... he did fire a firearm through the closed door of the nightclub, which caused the death of Tina Williams. [Emphasis added.]

When the State alleges that an element or fact is unknown to the grand jury, it must show that the grand jury used due diligence in trying to ascertain the fact which is alleged to be unknown. *Cunningham v. State*, 484 S.W.2d 906, 911 (Tex. Crim.App.1972). However, where the facts as developed at trial suggest that an investigation by the grand jury could not have helped in ascertaining the unknown fact, there is a prima facie showing of due diligence. *Id.* In an attempt to show this at trial, Mrs. Brown, the foreperson of the grand jury which re-indicted appellant, testified that her grand jury could not determine who appellant had intended to kill because he had fired the shot through a closed door. *She testified that during the re-indictment process, there was no mention of any threats by the appellant against the bar owner and manager. She also testified that her grand jury had heard the case previously.*

While the jury was deliberating, the Assistant District Attorney came forth and informed the court that Mrs. Brown's testimony was partly false, that her grand jury had not heard the case prior to re-indictment, and that the appellant had been originally indicted by a different grand jury. He testified that Mrs. Brown thought she had heard the case previously because he had told her so. The State asked to reopen its case, but was denied. The appellant moved for an instructed verdict and for mistrial, and both were denied.

On appeal, the appellant now claims that the evidence was insufficient to support the verdict because the State was not entitled

to rely on Mrs. Brown's testimony to show that the grand jury was diligent in trying to ascertain the identity of the person who the appellant intended to kill. We disagree. The error in Mrs. Brown's testimony did not affect any material issue.

When a person fires a gun into a crowd of people with no particular intended victim, the probability that serious bodily injury will result is so great that it is worse than reckless disregard of the consequences; if a death is thus caused, it is murder. *See Womble v. State*, 618 S.W.2d 59, 64 (Tex.Crim.App.1981); *Salisbury v. State*, 235 S.W. 901, 902 (Tex.Crim.App. 1921). We believe that in such a case, it is sufficient to allege that the accused intended to cause serious bodily injury to a person or persons unknown to the grand jury.

On the other hand, when the State can prove that the accused intended to harm a specific person, and when the State plans to use such proof of intent to show that the accused was the one who fired the shot, we believe that the State must specify in the indictment who he allegedly intended to kill. This latter example would be a case of "transferred intent". *Johnigan v. State*, 502 S.W.2d 136, 137 (Tex.Crim.App. 1973).

The appellant in the case at hand did not fire the fatal shot until half an hour after threatening to kill two specific people. Furthermore, he did not re-enter the bar before firing the shot. He had no rational basis to believe that the person he wanted to kill was standing on the opposite side of the door through which he fired. Therefore, we believe that this situation was more akin to the example of one firing into a crowd of people with no intended victim than to the example of transferred intent, even though the State used the appellant's threats to show that he fired the shot. The appellant may have wanted to take the life of a specific person, but he apparently settled for taking the life of whoever got in his way. We hold, therefore, that his intended victim was unknown as a matter of law, regardless of the appellant's prior threats.

Since the intended victim was unknown as a matter of law, we hold that there was a prima facie showing that the grand jury was diligent in ascertaining the identity of the intended victim. Therefore, Mrs. Brown's mistaken testimony to the effect that her grand jury had heard the case prior to re-indictment, which implied that her grand jury had knowledge of the appellant's threats, was irrelevant and harmless. By testifying that her grand jury knew that the appellant had fired a gun through a closed door and that he could not have known who was on the other side, Mrs. Brown established a sound basis for the language of the indictment. We hold that the indictment properly alleged murder under TEX.PENAL CODE ANN. sec. 19.02(a)(2), and that the evidence was sufficient to support the allegation. Appellant's second ground of error is overruled.

In ground of error number three, appellant claims that the trial court erred in admitting into evidence the following testimony of Gary Feemster to the effect that Rance Miller immediately re-entered the bar, after he and appellant were thrown out, and apologized for their conduct:

Q. And did those two individuals, the Defendant and the other individual, come back in the bar?

A. The other individual did.

Q. Okay. Not the Defendant?

A. No.

Q. Now, what, if anything, happened then?

A. The other individual came in and apologized. I—

MR. GILFEATHER [defense counsel]: Your Honor, we'll object to any conversation outside the presence of the Defendant.

THE COURT: Sustained.

MR. GILFEATHER: Thank you, Your Honor. We'd ask the Court to instruct the jury to disregard that last answer by the witness.

THE COURT: Ladies and gentlemen, you will disregard the last answer given.

MR. GILFEATHER: Your Honor, we feel no amount of instruction can cure the error, and we request a mistrial.

THE COURT: Denied.

The appellant contends that the assertion that "[t]he other individual [Rance Miller] came in and apologized" to Joe Feemster was inadmissible hearsay because the apology was allegedly made outside the presence of the witness and of the appellant. The appellant contends that the testimony was harmful because it supplied the jury with information from which it could infer that appellant rather than Rance Miller had a motive to discharge a firearm into the nightclub. These arguments are without merit for three reasons.

First, there was no objection at trial on grounds that the apology was made outside the presence of the witness. The only grounds stated in the objection was that the apology was made outside the presence of the defendant, which was irrelevant to the question of whether the statement constituted hearsay. Therefore, the trial court was not obligated to grant the appellant a mistrial or even to sustain the objection.

Second, even if appellant had properly preserved the alleged error for appeal by objecting that the apology to Joe Feemster was made outside the presence of the witness, Gary Feemster, he failed to prove it. Appellant's brief asserts that "Mr. Feemster admitted that he did not overhear the conversation", but we find no such admission in the record.

■ Third, assuming that appellant had preserved any error, the trial court sustained the appellant's objection and instructed the jury to disregard the testimony as to the apology. Therefore, the only issue is whether the judge abused his discretion in refusing a mistrial. We believe he did not abuse his discretion. An instruction to disregard testimony will cure an error unless the testimony was calculated to inflame the minds of the jury and was of such character as to suggest the impossibility of withdrawing the impression produced on the jurors' minds. *Carter v. State*, 614 S.W.2d 821, 825 (Tex.Crim.App.1981). There is no indication that the testimony was calculated to inflame the minds of the jury, and the prejudicial effect was negated by the fact that two other witnesses, Jacqueline Barnes and Larry Burdette, corroborated the testimony without objection. Error in the admission of evidence is cured where the same evidence is admitted elsewhere without objection. *Brown v. State*, 640 S.W.2d 275, 280 (Tex.Crim.App.1982).

■ We hold that the trial court did not err in denying the appellant a mistrial. Appellant's third ground of error is overruled.

Ground of error number four raises an objection to Officer Gary Gray's testimony. Gray testified as to two objects he discovered in the bar and characterized them as metal or lead. He then said:

A. It appeared that a large object or projectile of some sort had passed through the door from outside of the club, gone completely through the door, and it apparently had struck the complainant as she was beside the bar. It had entered, as I say, under her left ear. Apparently came out the right corner of her mouth, continued across the bar, struck the west wall, and at that time, bounced back across landing on the east side of the stage on the shelf or bar that was around the stage.

Q. Is it possible for a shotgun to have made that type of explosion in a door?

[Defense objections overruled as to expert qualifications regarding ballistics.]

Q. Would it be possible?

A. Yes, sir.

Q. Can you tell us how?

A. Yes, sir. Shotgun slugs—I don't know if y'all are familiar with them—it's a large caliber or large size piece of lead shaped like an extremely large bullet. It has what we call rifling on it, lands and grooves which essentially—they are essentially there to improve the trajectory or else make it spin at such a time it will fly a greater distance at a more linear

pattern. It won't dive or fluctuate or tumble. Those are normally role loaded in any caliber or gauge where a shotgun you can find from a 4.10 probably up to a .12 gauge, and due to the weight of them, they are extremely heavy, more heavy than you would find in most any gun or rifle available.

Due to the weight of them, they normally have quite a large charge of powder in the shell with them that would cause them to come out at such force that they could do that much damage and travel that far.

Appellant claims this testimony was given without Gray having qualified as an expert. We disagree. Gray testified as to his practical experience through military training, police and civilian training and training through sports. He also showed that he had taken a college course that included ballistics, weapons and ammunition. Further, he had extensive police work and training in the Marine Corps. We hold that the witness was sufficiently qualified to testify to the matters quoted above. *See Carrillo v. State,* 634 S.W.2d 21, 23 (Tex.App.—El Paso 1982, no pet.). We overrule ground of error number four.

In appellant's fifth ground of error, he asserts that the trial court erred in admitting an autopsy report because it was not introduced by the person who prepared it. We disagree.

The Tarrant County Medical Examiner testified that he was the custodian of autopsy reports even though he did not perform this particular autopsy. He also supplied the other elements of the business records exception to the hearsay rule. TEX.REV.CIV.STAT.ANN. art. 3737e (Vernon Supp.1985). Since the witness testified to the contents of the report, it was not exhibited to the jury because that would have been bolstering. Simply admitting the autopsy report into evidence and allowing the custodian to read from the report did not constitute error. *See Burrell v. State,* 446 S.W.2d 323, 324 (Tex.Crim.App. 1969). Appellant's fifth ground of error is overruled.

Appellant's sixth ground of error complains that the trial court erred in admitting the hearsay testimony of witness Burdette concerning a conversation with Rance Miller.

The conversation to which the witness testified occurred around dusk, after the shooting, when appellant and Miller drove up to Miller's house. The witness, who was already at Miller's house, stated that Miller exited the car on the driver's side and appellant exited on the passenger side and was holding a shotgun. Burdette further testified that Miller's cheek was bleeding and that Miller said it was bleeding because he had been hit by a bottle. Burdette said that appellant was in the immediate vicinity when Miller made this statement. Burdette then testified that appellant made several statements of his own to the effect that he had been thrown out of a bar and that he, appellant, had returned to kill the man who did it.

Appellant now alleges that Miller's remark about being hit by a bottle was inadmissible hearsay and that it was harmful because it refuted appellant's theory that Miller was the one who fired the shot and that Miller's cheek was bleeding due to the recoil of the shotgun. We disagree that the testimony was inadmissible.

Though the evidence was hearsay, we hold that it was admissible under the res gestae exception. *See Ward v. State,* 657 S.W.2d 133, 136 (Tex.Crim.App.1983). The facts show that the statement was made in relation to a startling event while the declarant, Miller, was still under the stress of that event. Appellant's sixth ground of error is overruled.

By ground of error number seven, appellant complains that the trial court committed reversible error in failing to negate "sudden passion" in its murder charge. Appellant simply states in his brief that sudden passion should be negated regardless of whether voluntary manslaughter is included in the charge. We disagree. Appellant cites no statute or case authority. We perceive no error be-

cause voluntary manslaughter was not raised and was not submitted to the jury. Had voluntary manslaughter been raised, appellant's reliance on *Green v. State*, 658 S.W.2d 303, 306 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd) and *De La Rosa v. State*, 660 S.W.2d 642, 645 (Tex.App.—Corpus Christi 1983, no pet.) might be correct. The issue of voluntary manslaughter was not raised, hence there is no error. *See Hobson v. State*, 644 S.W.2d 473, 478 (Tex. Crim.App.1983).

■ In grounds of error numbers eight and nine, appellant raises complaints about the court's charge.

The indictment alleges that appellant did, among other things, "fire a firearm through the closed door of the nightclub." (The indictment before us charges *murder only* and *not* involuntary manslaughter as stated in the State's brief.) The charge on murder correctly uses the language "he did *fire a firearm* through the closed door of the nightclub ..." In the charge on the lesser included offense (involuntary manslaughter), however, the court uses the phrase "by *shooting* through the closed door of a nightclub ..." in applying the law to the facts. Appellant complains that the charge failed to specify the means appellant used to shoot the deceased. We disagree. The charge speaks in terms of a firearm or shotgun at three places before the involuntary manslaughter charge and the trial judge instructed the jury to "consider the charge as a whole." *See Thomas v. State*, 599 S.W.2d 812, 814 (Tex.Crim. App.1980). Further, to "fire a firearm" and to "shoot" are the same thing. Webster defines "shoot" thusly: "To let fly or cause to be driven forward with force ... from a bow, sling, or similar device or from a firearm." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2100 (1981).

Appellant's ninth ground of error relates to the same language in the jury charge and appellant submits that because of the different wording used in the application paragraphs regarding murder and involuntary manslaughter, the court committed fundamental error. Specifically, appellant claims that a lesser included offense cannot have elements which differ from those of the main offense.

■ Inasmuch as appellant did not object at trial to the error in the court's charge, we must decide whether the error was so egregious and created such harm that appellant has not had a fair and impartial trial—in short, "egregious harm". *See Almanza v. State*, 686 S.W.2d 157, 173 (Tex.Crim.App.1985) (opinion on rehearing) (not yet reported); TEX.CODE CRIM. PROC.ANN. art. 36.19 (Vernon 1981).

■ In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza* at p. 173. The purpose of this review is to illuminate the actual, not the theoretical, harm to the accused. *Id.* at p. 171.

■ We find no egregious harm in the wording of the charge and we hold that there was no fundamental error. Grounds of error eight and nine are overruled.

In ground of error number ten, appellant complains of the trial court's responses to two notes sent from the jury during deliberations. Appellant contends that these responses resulted in jury misconduct and a wrongful conviction.

Throughout trial, the State attempted to prove that appellant was the person who fired the fatal shot. Appellant's theory of the case was that Rance Miller had fired the shot and that he, appellant, should not be convicted on mere presence at the scene of the offense. During deliberations, the jury twice requested the judge to instruct them on "the law of parties." Appellant asked the judge to inform the jury that the law of parties was not applicable to the case. The judge denied the request and instructed the jury that all the law applicable to the case was contained in the charge

and that he was not allowed to give any further instructions.

■■■■■ Since both the State and appellant have admitted that the law of parties is not applicable to this case, the only issue presented herein is whether the trial judge sufficiently communicated this fact to the jury. TEX.CODE CRIM.PROC.ANN. art. 36.27 (Vernon 1981) requires the court to answer communications from the jury and to give additional instructions on questions of law requested by the jury when the request is proper. If the request is not proper, the court should so inform the jury by referring them to the court's charge. *Gamblin v. State,* 476 S.W.2d 18, 20 (Tex. Crim.App.1972). It appears from the record that the court's charge authorized a conviction only if the jury found that appellant fired the gun. We hold, therefore, that the trial court did not err in instructing the jury to look to the charge for all the law applicable to the case.

■■■■ Another issue which is implicit in this ground of error, though not expressly raised in appellant's brief, is whether the trial court erred in overruling appellant's motion for new trial. In that motion, appellant alleged that the jury improperly convicted appellant of involuntary manslaughter simply because he was a party to the offense. During the hearing on the motion for new trial, appellant tried to elicit testimony from one of the jurors to the effect that the jury was never convinced that appellant was the one who pulled the trigger. After listening to all the evidence, the trial judge found no jury misconduct.

After reviewing the record of the hearing, we hold that the judge did not err in overruling the motion for new trial. Appellant's tenth ground of error is overruled.

■■■ By ground of error number eleven, appellant complains generally about a sister-state "penitentiary packet". His claim, on appeal, is that a Kentucky conviction does not appear on its face to be a final conviction and he complains that there is no judgment and sentence. There is a judgment and sentence in the record. As to appellant's claim that the conviction might not be final, nothing is presented on appeal as he did not raise the matter in the trial court. His objection at trial was simply that there was "no fixed sentence" (and there is one—for a 15-year term). *See Carrillo v. State,* 591 S.W.2d 876, 892 (Tex. Crim.App.1979). Error presented on appeal must be the same as trial objection. *Boyd v. State,* 643 S.W.2d 700, 706 (Tex. Crim.App.1982).

■■■ Further, *Johnson v. State,* 583 S.W.2d 399, 403 (Tex.Crim.App.1979) (a case not cited by either party) teaches the rule applicable in this situation: Where the record is silent as to whether a prior conviction is final and the state has proved a prior conviction with certified copies of the judgment and sentence, the burden shifts to the defendant to show his conviction was not final. Proof of a lack of finality of the conviction was not presented by appellant. We hold that the State's proof was adequate to show the prior conviction was final before the commission of the present offense. *See Ashley v. State,* 527 S.W.2d 302, 305 (Tex.Crim.App.1975). Ground of error number eleven is overruled.

By appellant's ground of error number twelve, he complains of the trial court's failure to dismiss for "lack of a Speedy Trial," claiming the State's announcement of "ready" on the first and second indictments did not carry forward to the third indictment, citing *Richardson v. State,* 629 S.W.2d 164, 165 (Tex.App.—Dallas 1982, pet. ref'd). Appellant contends that the addition of a new paragraph 3 to the third indictment was a different allegation with different elements requiring different proof than the two prior indictments, and that the State could not possibly have been ready for trial on the new indictment within the statutory period. (We note that the first two indictments are not contained in the appellate record.)

The trial court found the *Richardson* case distinguishable inasmuch as it involved the addition of an entirely new offense, whereas the instant case merely involved the addition of a different mode of

committing the same offense. The trial court found, therefore, that the State's original announcement of "ready" carried forward to the new indictment and that the State complied with TEX.CODE CRIM. PROC.ANN. art. 32A.02 (Vernon Supp. 1985) even though the first indictment was then defective.

 The Speedy Trial Act does not require that the State be ready with a perfect indictment. Even though the defect in the charging instrument is such that it would require a mistrial or reversal of a conviction, the presence of such a defect does not necessarily indicate that the State was not ready for trial. *Ward v. State,* 659 S.W.2d 643, 647 (Tex.Crim.App.1983). A defective indictment is treated in much the same manner as other causes for trial delay with the nature of the defect and the length and reasonableness of the delay weighed in determining whether or not the State was, in fact, not prepared for trial. *Id.*

Since the appellant has failed to supply this court with a copy of the original indictment, it is impossible for us to determine whether the third indictment alleged a new offense or simply altered the original offense. We must assume, therefore, that the trial court correctly weighed the evidence in finding that the State's original announcement of "ready" should be carried forward to the new indictment. We hold that the trial court did not err in denying appellant's motion to dismiss the prosecution for want of a speedy trial. Appellant's twelfth ground of error is overruled.

Affirmed.