The STATE of Texas, Appellant,

v.

Richard SHELTON, Appellee.

No. 12–91–00074–CR.

Court of Appeals of Texas,
Tyler.

Nov. 30, 1993.

514

Amy Blalock, Asst. Dist. Atty., Tyler, for appellant.

F.R. Files, Jr., Tyler, for appellee.

RAMEY, Chief Justice.

This is an appeal by the State of Texas of the trial court's action in granting the Appellee, Richard Shelton ("Shelton"), a new trial. Shelton had been indicted for the murder of Coby Dean Chancellor ("Coby"); he was convicted by a jury of the lesser-included offense of involuntary manslaughter and his punishment assessed at ten years confinement and a $5,000 fine. The trial court sentenced Shelton and made an affirmative finding of Shelton's use of a deadly weapon. Thereafter, Shelton's motion for new trial was timely filed and subsequently granted on March 18, 1991. TEX.R.APP.P. 31.

■ Coby, 15, was shot and killed inside his house on the night of March 27, 1986,

when Shelton fired his cousin Mitchell Shelton's ("Mitchell") .12 gauge shotgun into the house fifty to seventy five feet from the door. The trial court announced no reason for granting the new trial. It is not necessary that the court's grounds for the new trial be one of those catalogued in TEX.R.APP.P. 30(b). *State v. Evans*, 843 S.W.2d 576, 578 (Tex.Cr.App.1992). The order for a new trial was entered after a brief hearing in which no proof was adduced. The State appeals the trial court's ruling pursuant to TEX.CODE CRIM.PROC.ANN. art. 44.01(a)(3).

■ Our standard of review is whether the trial court abused its discretion in granting the new trial. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Cr.App.1993); *State v. Lyons*, 812 S.W.2d 336, 341 (Tex.Cr.App.1991). This standard has been interpreted to mean that a case will be reversed "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex.Cr.App.1992).

Though the trial court stated no reason for her ruling, the State need defend only against the allegations asserted in Shelton's motion for new trial. *State v. Gonzalez*, 855 S.W.2d at 694–95. Here, the motion for new trial had specified five grounds of trial court error: (1) in denying Shelton's motion for a finding of not guilty as to the murder indictment after the State had rested; (2) in denying Shelton's motion for a finding of not guilty as to the murder indictment after both sides had rested and closed; (3) in instructing the jury that they could find Shelton guilty of the offense of murder; (4) in instructing the jury that they could find Shelton guilty of the offense of involuntary manslaughter; and (5) in making an affirmative finding that Shelton had used and exhibited a deadly weapon in the commission of the offense of involuntary manslaughter. Shelton additionally asserted that the verdict was contrary to the law and evidence in that "[t]he evidence taken in the light most favorable to the State will not support the finding of guilty beyond a reasonable doubt as to the

offense of involuntary manslaughter".[1] The State must negate each of the grounds asserted in the motion for new trial.

■ The first three of these grounds relate to the trial court's denial of Shelton's motions to find him not guilty to the murder indictment and in instructing the jury that they could find him guilty of murder under Tex.Pen.Code Ann. § 19.02(a)(2) (Vernon Supp.1991). Though not found guilty of murder, Shelton argues that because the murder count was erroneously submitted to the jury, he was deprived of a fair trial.

Shelton urges that the basis for these three grounds of error is that the murder indictment failed to assert that he intended to cause serious bodily injury to the specific individual who was killed, Coby Dean Chancellor. Shelton originally was charged with murder under both TEX.PENAL CODE ANN. § 19.02(a)(1) and (2). After the State rested its case, the trial court found Shelton not guilty of murder as to 19.02(a)(1) which ruling thereby eliminated the culpable mental state that Shelton acted "knowingly, or with knowledge" at the time of the shooting, pertaining to which the State offered circumstantial evidence that Shelton was "aware that his conduct is reasonably certain to cause the result." TEX.PENAL CODE ANN. § 6.03(b). Under the remaining murder indictment, 19.02(a)(2), the requisite mental state was limited to Shelton's *intention*, if any, to cause serious bodily injury to an individual.

The accused did not seek to quash the murder indictments, but contended that the State failed to prove his intention to cause serious bodily injury to the deceased. Shelton cites two cases for the proposition that under 19.02(a)(2) the victim must be that specific individual toward whom the accused intended seriously bodily injury. *Ortiz v. State*, 651 S.W.2d 764, 767 (Tex.Cr.App. En banc 1983); *Depauw v. State*, 658 S.W.2d 628, 633 (Tex.App.—Amarillo 1983, pet.

ref'd.). There is language in these opinions that the State must allege and "prove that the accused intended to cause serious bodily injury to the deceased."[2] *Ibid*, at 633.

Here, there was no evidence of an intention by Shelton to cause serious bodily injury to Coby or any other occupant of the Chancellor house. The State proved no animosity between the Sheltons and the Chancellor family; to the contrary, there was undisputed evidence that Shelton had brought food and some clothing to and visited the Chancellor family at their house on several occasions as late as 1979 and that prior to the shooting some of the Shelton and Chancellor children had attended public school together; there had been no contact between Shelton and any of the Chancellors for several years prior to the shooting. Shelton testified that some unidentified person had previously told him that the Chancellors had moved from the house where the shooting occurred. The only explanation for the shooting in the record was Shelton's desire to fire Mitchell's recently modified firearm.

There was, therefore, no evidence of Shelton's intent to harm Coby. Criminal responsibility by "transferred intent" is inapplicable because it requires a specific intent to harm "a different person", which intent was not shown here. TEX.PENAL CODE ANN. § 6.04(b)(2). An accused's intent may, however, be inferred by the means used and the nature of the wounds inflicted; i.e., where a deadly weapon is fired at close range and death results, the law presumes the requisite intent. *Womble v. State*, 618 S.W.2d 59, 64 (Tex.Cr.App.1981). We hold, however, that the facts of this occurrence do not give rise to such a presumption.

■ This tragic event produced no evidence of Shelton's intent to cause serious bodily injury as in a drive-by shooting or where an accused fired a gun into a crowd of

---

1. The motion could have also included an allegation that a new trial should have been granted on the non-factual ground, "in the interest of justice". *Gonzalez*, 855 S.W.2d at 693–94. "In the interest of justice" was not pled as a ground for new trial and was not urged on appeal.

2. The specific identification of the person who was the intended victim, however, was not a contested or controlling issue in either case cited by Shelton.

people[3] or into a moving train[4], a moving automobile[5] or a building which the accused knew to be occupied[6]. It is not necessary that the indictment name the specific victim; it is even sufficient that the charging instrument allege that the accused intended to cause serious bodily injury to a person or persons unknown to the grand jury as long as the evidence showed that the accused intended to harm someone. *Ishmael,* 688 S.W.2d at 258. There was no evidence, however, that Shelton had any intent to cause serious bodily injury to any person. We hold that under the state of this record, the trial court erred in failing to grant Shelton's motion for a finding of not guilty on the § 19.-02(a)(2) murder charge.

■ Shelton contends that the court's failure to give a not-guilty instruction to the § 19.02(a)(2) murder indictment denied him a fair trial as guaranteed by the UNITED STATES and the TEXAS CONSTITUTIONS. Shelton presents no argument and cites no authority to support this contention. Furthermore, such error was harmless beyond a reasonable doubt by virtue of the jury's failure to find Shelton guilty of murder. Trial errors, even those of constitutional magnitude, do not compel reversal of an accused's conviction when they are harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2); *Garza v. State,* 828 S.W.2d 432, 436 (Tex. App.—Austin 1992, pet. ref'd); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Hill v. State,* 480 S.W.2d 200, 203 (Tex.Cr.App.1972), *cert. denied,* 409 U.S. 1078, 93 S.Ct. 694, 34 L.Ed.2d 667. Here, no attempt was made to show how Shelton was harmed by the submission of the murder charge. If one of the first three asserted grounds in the motion was the reason that the trial court granted the new trial, the decision was erroneously made and an abuse of the court's discretion.

The parties agree that Shelton's fourth ground for a new trial, considered with his other contention that the evidence did not support the finding of guilt of involuntary manslaughter, beyond a reasonable doubt, presents the issue of insufficiency of the evidence to support the verdict. Stated otherwise, the trial court abused its discretion in granting a new trial if any rational trier of fact, when viewing the evidence in the light most favorable to the verdict, could have found the essential elements of the offense beyond a reasonable doubt. *State v. Daniels,* 761 S.W.2d 42, 45 (Tex.App.—Austin 1988, pet. ref'd).

■ The gist of involuntary manslaughter is "recklessly causing the death of an individual". TEX.PENAL CODE ANN. § 19.05(a)(1). This degree of recklessness is defined in TEX.PENAL CODE ANN. § 6.03(c) (Vernon 1974). It involves conscious risk creation in which the actor is aware of the risk surrounding his conduct or the results thereof, but consciously without justification disregards that risk. *Lewis v. State,* 529 S.W.2d 550 (Tex.Cr.App.1975).[7]

■ Indisputedly, Shelton voluntarily and intentionally fired the gun into the Chancellor house. "It is virtual surplusage to point out that firearms are dangerous instrumentalities, and that their very purpose is to kill or injure should the necessity arise." *Sadler v. State,* 728 S.W.2d 829, 830 (Tex.App.—Dallas, 1987, no pet.). It was undisputed that this shotgun and its ammunition were powerful, capable of hunting large animals. Shelton's shooting into the house, when he could have aimed the gun without risk at almost any other place or direction in this rural setting, supports a finding of conscious risk creation.

3. *Ishmael v. State,* 688 S.W.2d 252, 258 (Tex. App.—Fort Worth 1985, pet. ref'd).

4. *Banks v. State,* 85 Tex.Crim. 165, 211 S.W. 217 (1919).

5. *Womble,* 618 S.W.2d at 64; *Salisbury v. State,* 90 Tex.Crim. 438, 235 S.W. 901, 902 (1921).

6. *Ishmael,* 688 S.W.2d at 254.

7. By contrast, recklessness in the commission of the offense of criminal negligent homicide, as defined in TEX.PENAL CODE ANN. § 6.03(d) (Vernon 1974), involves inattentive risk creation in that the actor ought to be aware of the risk surrounding his conduct but failed to perceive that risk. *Lewis v. State,* 529 S.W.2d 550, 553 (Tex.Cr.App. 1975).

In their briefs, the parties agreed that "[t]he central question appears to be whether the appellee (Shelton) knew that the Chancellor residence was occupied" at the time of the shooting. Proof of mental state must almost always depend upon circumstantial evidence. *Ibid,* at 831. "The trier of fact is to make its determination from all the circumstances." *Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Cr.App.1978).

We thus turn to the record. The following facts were not disputed: Coby's mother, Nell Chancellor, and her six children had lived in the small frame house on the Saline Creek Road near Noonday in southern Smith County for approximately fifteen years. Coby was shot by Shelton using a modified Stevens .12 gauge shotgun owned by his cousin Mitchell at approximately ten p.m. on March 27, 1986. Coby died from these wounds. Shelton fired directly into the front door of the Chancellor house from a distance of from fifty to seventy-five feet. Coby had gone to the front door to look through a peep hole after Mitchell's pickup truck drove up and stopped in front of the family's house.

Shelton had been drinking beer and driving around with Mitchell in his pickup truck prior to the shooting. Shelton had expressed a desire to shoot Mitchell's recently modified shotgun. The record is not clear as to which occupant of the pickup suggested that they stop in front of the Chancellor house for Shelton to fire the gun.

On the disputed issue of whether Shelton was aware that the house was occupied at the time of the shooting, Nell Chancellor and her children testified that:

- there was a 100 watt light bulb burning on their front porch (which light the investigating detective testified was burning when he arrived later that evening),
- prior to the shooting, the Chancellors had gone to bed and the house was dark, but Glenda Chancellor briefly switched on the front bedroom light after the Shelton pickup drove up,
- Nell's son Milton Chancellor's 1973 Oldsmobile was parked in the front yard in closer proximity to the place where the gun was fired than was the front of the Chancellor's house,
- another Chancellor vehicle, although inoperable, was parked in the yard,
- there was testimony of a clothesline alongside the house and of the Chancellor's dogs staying on or about the front porch.

Significantly, Mitchell Shelton also recalled seeing a small light burning on the Chancellor's front porch prior to the shooting. Mitchell also testified that he heard a man's voice, presumably Shelton's, yell "Hey", immediately after the shot rang out.

Shelton consistently denied seeing any lights on the premises, the automobiles or other indicia suggesting occupancy of the Chancellor house on the evening of the shooting. He testified that the last few times he drove by the Chancellor house it did not appear to him to be occupied, and that someone had told him that the Chancellors had moved from the house. Other witnesses testified that they had driven on the road by the Chancellor house prior to the shooting, and they did not know that the Chancellor family lived there.

■ The trier of fact, the jury, can choose to believe or disbelieve witnesses or any portion of their testimony or the weight to be given to it, and may believe a witness, even though he is contradicted. *Sharp v. State,* 707 S.W.2d 611 (Tex.Cr.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). A jury is entitled to reject one version of the facts and accept another. *Johnson v. State,* 673 S.W.2d 190, 196 (Tex.Cr.App.1984); *Alvarado v. State,* 822 S.W.2d 236 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd).

Here, the jury, in finding the accused guilty of involuntary manslaughter, impliedly accepted as true the Chancellor's testimony and concluded that Shelton was aware of the risk created by his conduct; the trier of fact, after observing Shelton testify, rejected his testimony of the conditions at the scene of the shooting and that he was not aware of the circumstances indicating that the house was occupied. It was the jury's prerogative to determine whether to draw the inference

that Shelton was aware of the risk, and it is not for this Court to overturn an inference on the basis of Shelton's testimony that his version did not comport with the State's evidence. *Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Cr.App.1978).

Furthermore, the evidence supports the inference that Shelton not only was aware of the risk but consciously without justification disregarded the risk of firing into the house. The same evidence that supported the inference by the jury that Shelton was aware of the risk also supported the inference that he consciously disregarded those facts and fired the gun into the house. His testimony was that when the truck stopped in front of the Chancellor house, he stepped out, fired the shotgun, climbed back into the cab, and immediately left the scene. Shelton's testimony that the entire episode consumed no more than ten seconds demonstrated that Shelton could have made no attempt to ascertain the presence of occupants in the house before firing the gun; Shelton, in fact, acknowledged that he made no such effort.

Shelton's contention is that the sufficiency point should be analyzed from the perspective of whether he, if he had requested it, would have been entitled to a charge on the lesser-included offense of involuntary manslaughter; he asserts that where the accused had denied, as here, awareness of the presence of any people in the Chancellor house, he would not have been entitled to the lesser-included charge. *Simpkins v. State,* 590 S.W.2d 129, 134 (Tex.Cr.App.1979, reh. en banc den.). Here, however, the issue is not whether Shelton is entitled to a lesser-included charge but the sufficiency of the evidence. Our review of the sufficiency of the evidence in which the evidence must be viewed in the light most favorably to the State is diametrically opposed to the court's action in refusing to submit the requested charge and Shelton's

contention is not controlling here. *Davis v. State,* 757 S.W.2d 386, 388 (Tex.App.—Dallas 1988, no pet.); *Sadler v. State,* 728 S.W.2d 829, 832 (Tex.App.—Dallas 1987, no pet.).

The trial court, in ruling on an allegation in a motion for new trial challenging the sufficiency of the evidence to support the jury finding, was not acting as a trier of fact and thus could not substitute its view of the evidence[8]. *Chase v. State,* 573 S.W.2d 247, 249 (Tex.Cr.App.1978); *State v. Daniels,* 761 S.W.2d 42, 45–46 (Tex.App.—Austin 1988, pet. ref'd). In ruling on the motion for new trial, a legal, not a factual, question was presented for the trial court and the trial court was required to apply the identical legal standard invoked by this Court on appeal; furthermore, it also was required to view the evidence in the light most favorable to the guilty verdict. *Ibid.,* at 45. We hold that the jury's implied fact finding that Shelton was aware of the risk involved in his conduct and that he consciously disregarded that risk are sufficiently supported by the evidence and meet the "any rational jury" test. If the reason that the trial court granted the new trial was the insufficiency of the evidence to support the jury's guilty finding of involuntary manslaughter, the decision was erroneously made and was an abuse of that court's discretion.[9]

■ Finally, Shelton asserted in his motion for new trial that after pronouncing sentence, the trial court at first erred by entering an affirmative deadly weapon finding. The affirmative finding was entered by the court after receiving the jury verdict of guilty and the sentence was pronounced. The court's deadly weapon finding affected Shelton's eligibility for probation and parole.

There are generally two distinct issues for consideration when such affirmative finding is made: (1) notice to the accused that his

---

**8.** As noted, no evidence was offered at the new trial hearing and there was no new fact issue presented for trial court determination. If, however, evidence had been presented and new issues raised at the hearing on the motion for new trial, the trial court would become the trier of fact and judge of the credibility of the witnesses that testified at the new trial hearing. *Tollett v. State,* 799 S.W.2d 256, 259 (Tex.Cr.App.1990).

**9.** Our holding that the trial court should not have granted the new trial is substantiated by the court's order of a new trial, rather than an acquittal. If insufficiency of the evidence was the basis for the new trial, the only further action permitted by the Double Jeopardy Clause was the entry of a judgment of acquittal. *Moore v. State,* 749 S.W.2d 54, 58 (Tex.Cr.App.1988); *Daniels,* 761 S.W.2d at 45. '

use of a deadly weapon would be an issue at trial, pursuant to TEX.CRIM.PROC.CODE ANN. Art. 42.01 § 1(21), and (2) the entry of the affirmative finding itself under Art. 42.12 § 3g(a)(2). *Ex Parte Beck,* 769 S.W.2d 525, 527 (Tex.Cr.App.1989). Unlike *Beck,* the disputed issue in this appeal does not pertain to "notice" but to the second issue, the court's entry of the affirmative finding of Shelton's use of a deadly weapon.

Although obiter dictum in *Beck,* the court of criminal appeals has specified that an affirmative finding "can be accomplished by: "(1) A jury's answer to a special issue, or (2) by a finding of 'guilty as charged in the indictment'." *Beck,* 769 S.W.2d at 528. Neither of these requirements was satisfied here. Thus, we hold that it was an abuse of discretion to have made the affirmative finding. Shelton's contention is sustained. There is, however, no necessity for a new trial. Shelton's conviction is modified to delete this affirmative finding.

The trial court's order granting Richard Shelton a new trial is reversed and the trial court's judgment is modified to delete the court's affirmative finding of Shelton's use of a deadly weapon and, as modified, the trial court's judgment is **affirmed.**