Antonio MANRIQUE, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 04–95–00943–CR, 04–95–00944–CR.

Court of Appeals of Texas,
San Antonio.

March 19, 1997.

Jay Robert Brandon, San Antonio, for Appellant.

Robert Boyd Padgett, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before GREEN, J., CAMPBELL, Former Judge,[1] and CHAPA, C.J. (Retired)[2].

## OPINION

CHARLES F. CAMPBELL, Former Judge (Assigned).

Appellant, Antonio Manrique, was indicted in two separate indictments for the offenses of attempted murder, along with a codefendant, David Samudio. In cause no. 5702A appellant was indicted for attempting to murder a person a) unknown to the grand jury or b) Edward Avilez. In cause no. 5703A appellant was indicted for attempting to murder a person a) unknown to the grand jury or b) Donnie Avilez. To each indictment, appellant pled not guilty. In a jury trial, appellant was convicted of attempted murder under each indictment. The jury assessed punishment at twenty years confinement in the Texas Department of Criminal Justice, Institutional Division. The trial court ordered the punishment in cause no. 5702A to run concurrently with that in cause no. 5703A. In an appeal to this court, appellant raises two points of error.

Since there is at least a partial challenge to the legal sufficiency[3] of the evidence, a brief summary of the facts is necessary. Viewed in a light most favorable to the verdict, the record shows that on October 8, 1993, Edward Avilez and his wife Donnie Avilez were asleep in Edward's father's house, along with assorted other relatives. At about 4:00 in the morning the house was riddled with bullets. Both Edward and Donnie were hit by bullets. Donnie, who was pregnant, lost her baby, but she and Edward survived the fusillade.[4] Police recovered 26 shell casings from a yard adjacent to the Avilez home. The shots had been fired from an alley behind the Avilez home and permeated the entire house. According to a firearms examiner the shell casings found near the alley and in the Avilez home matched an AK–47 assault rifle recovered from behind a couch in appellant's home. Appellant and Samudio were seen with the rifle by several people the night of the attack. Appellant told police that he thought a ballistics test would show that the rifle recovered from his home was used in the attack.

The night before these offenses were committed, appellant and Samudio attended an

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988 & Supp.1997).

2. Chief Justice Alfonso Chapa (retired), not participating.

3. There is no challenge to the factual sufficiency of the evidence. *See generally Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996.).

4. One of the victims testified that it was hard to see immediately after the shots were fired because of all the dust the bullets kicked up inside the house.

impromptu social gathering at an apartment complex near the Avilez home. During this gathering, Samudio and appellant showed up with an ice chest that contained the AK–47 rifle. Samudio told a witness that he and appellant were going to "light up somebody's house—" the "somebody" allegedly was the house of a member of a rival gang, the Suicidal Locos. Witnesses testified that appellant and Samudio left the gathering for a period of time, but later returned, banging on the apartment door trying to gain entrance. Appellant and Samudio were re-admitted, and both appeared tired and out-of-breath. Later that morning, Samudio told a witness, Jacob Rosales, that "they did the deal." Samudio was cautioned by appellant not to say anything. Appellant told Rosales that he and Samudio went into an alley, put a gun over the fence and started shooting at a yellow house on Hot Wells.[5] Appellant said that he started shooting at the house, the gun jammed, and Samudio took it from him and started shooting again.

Witness Brenda Davila testified she saw Samudio put the rifle in his pants, and later saw appellant and Samudio leave the apartment with the rifle wrapped in a blanket. Davila further testified she overheard appellant and Samudio talk "about how they shot somebody." She overheard Samudio say he thought he "shot that girl that was pregnant."

In his first point of error, appellant claims the evidence was insufficient to prove appellant committed attempted murder "because there was no evidence of intent to murder the complainants specified in the court's charge." Apparently, appellant argues that the State only proved that he had the specific intent to murder a house—not a human being,[6] much less Edward or Donnie Avilez. Further, appellant argues that there is no evidence to support the paragraphs in the indictments that allege the attempted murder of a person unknown to the grand jury.[7]

## Standard of Review

The standard of review for the legal sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Williams v. State*, 937 S.W.2d 479, 482–83 (Tex.Crim.App.1996). This standard is the same for both a direct and circumstantial evidence case, and the prosecution need not exclude every other reasonable hypothesis except the guilt of the accused. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App. 1993), *cert. denied*, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 222 (1994); *Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim.App.1991).

## Applicable Law

When an indictment alleges that an element or fact is unknown to the grand jury, the state has the burden of showing that the grand jury used due diligence in trying to ascertain the fact which is alleged to be unknown. *Ishmael v. State* 688 S.W.2d 252, 257 (Tex.App.—Ft. Worth, 1985, pet.ref'd).

---

5. The Avilez home was located at 327 Hot Wells. It was yellow in color.

6. Appellant points out that the doctrine of transferred intent (TEX. PENAL CODE ANN. § 6.04(b)) was given to the jury in the abstract portion of the court's charge but was not applied to the facts in the application paragraph. Thus he argues that the theory of transferred intent is not available to the state to support the conviction. With this premise the state concedes, and we agree. *See Garrett v. State*, 749 S.W.2d 784, 788–89 (Tex. Crim.App.1986). Therefore, we will only consider the sufficiency of the evidence as it relates to the allegation of attempted murder of a person or persons unknown to the grand jury in Paragraph A of each indictment.

7. Since the jury returned a general verdict of "guilty of attempted murder as charged in the indictment," there is no way of determining the theory upon which the jury based its verdict. This is common, our court of criminal appeals having held that it is appropriate where alternative theories of committing the same offense are submitted to the jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991), *cert denied*, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992).

However, where the facts as developed at trial suggest that an investigation by the grand jury could not have helped in ascertaining the unknown fact, there is a prima facie showing of due diligence. *Id.* As appellant suggests in his brief, if the state is unable to prove the grand jury did not know or it did not use diligence, the trial court must find a fatal variance between the indictment and the proof. *See Coleman v. State,* 918 S.W.2d 39, 41 n. 1 (Tex.App.—Houston [1st Dist.] 1996), *aff'd,* 940 S.W.2d 96 (Tex. Crim.App.1996).

■ When a person fires a gun into a crowd of people with no particular intended victim, the probability that serious bodily injury will result is so great that it is worse than reckless disregard of the consequences; if a death is thus caused, it is murder. *Ishmael,* 688 S.W.2d at 258. In such a case, it is sufficient to allege that the accused intended to cause serious bodily injury to a person or persons unknown to the grand jury. *Id.* at 258.

### Application of Law to Facts

■ In the instant case, the State presented evidence from the foreperson of the grand jury that indicted appellant, viz: due diligence was used to attempt to discover who the intended targets of appellant and Samudio were. That effort produced only the notion that they were going to shoot up an "SL's" (Suicidal Locos) house. No evidence was discovered as to the name of the intended victim or victims.[8] We conclude that sufficient diligence was used in trying to discover the name(s) of the intended victim. As to the criminal intent or *mens rea* of appellant, we find ample evidence that he and Samudio

were intending to at least shoot up the house of an "SL," and we find that the firing of at least 26 rounds of ammunition from an AK-47 assault rifle at a residential dwelling at 4 A.M. was sufficient to demonstrate that appellant intentionally and knowingly attempted to cause the death of person(s) unknown to the grand jury. *See Ishmael,* 688 S.W.2d at 258. Appellant's first point of error is overruled.

■ In his second point of error, appellant avers that he was twice punished for the commission of the same offense, in violation of the prohibition of double jeopardy under the United States Constitution, Fifth Amendment.[9] Appellant argues that the trial court authorized the jury to convict and sentence him for two offenses if they found "the exact same conduct." In essence, he appears to argue that since the State was precluded from sustaining convictions for attempted murder through the vehicle of transferred intent, *see generally Garrett,* 749 S.W.2d at 788–89, convictions of appellant in both indictments for attempted murder of "person or persons unknown to the grand jury" were based on identical conduct. While there appears to be no caselaw that decides this precise issue, we believe that a fair reading of the caselaw decided by the United States Supreme Court in *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), coupled with our examination of Texas appellate decisions interpreting same, lead us to agree with appellant.

---

8. Appellant argues that he did not even know the victims in this case, ergo, the evidence only shows an intent to damage the house by shooting it. This argument misses the point. Had appellant known the victims, no doubt the indictments in this case would not have pled "person or persons unknown." Appellant cannot escape culpability simply because he did not know the names of the victims. If this were possible, a defendant could shoot dozens of unknown spectators at a football game and only be culpable of disturbing the peace or discharging a firearm in the city limits simply because he did not know anyone.

9. The State argues that appellant waived this claim by failing to object at trial. We believe that Tex.Code Crim Proc. Ann. art. 27.05 addresses situations where there has been a previous trial, resulting in a conviction, acquittal, or some form of termination of trial rather than a situation where the State is seeking multiple punishments for the same offense in the same trial. Therefore, we believe the issue is ripe for review. *Cf. Tinney v. State,* 773 S.W.2d 364, 366 (Tex.App.—Ft. Worth 1989, pet. ref'd).

## Applicable Law

 Although there is a fair amount of disagreement in our jurisprudence with respect to double jeopardy, one concept that has remained fairly constant is that the Double Jeopardy Clause of the United States Constitution provides three distinct protections, against: 1) second prosecution for the same offense after acquittal; 2) second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense. *Phillips v. State*, 787 S.W.2d 391, 393 (Tex.Crim.App.1990).[10] To determine whether a prosecution violates the protection against multiple punishments, courts apply the same-elements test set out in *Blockburger*. *Flores v. State*, 906 S.W.2d 133, 136 (Tex.App.—San Antonio 1995, no pet.).[11] Where a state legislature specifically authorizes cumulative punishment under two statutes, even if those two statutes prohibit the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the state may seek and secure cumulative punishment under such statutes in a single trial. *Missouri v. Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679, 74 L.Ed.2d at 544.

## Application of Law to Facts

 In the instant case appellant was tried, convicted and sentenced in Count I, Paragraph A of the indictment in Cause # 5702A, for the *identical* offense for which he was tried, convicted and sentenced in Count I, paragraph A of the indictment in cause # 5703A, viz: the attempted murder of "person and persons unknown to the grand jury." The application of the *Blockburger* test to these facts produces the inescapable conclusion that there were two prosecutions for the same offense.

These were not just similar offenses, with differing elements, like *Parrish v. State*, 869 S.W.2d 352 (Tex.Crim.App.1994) (speeding and driving while intoxicated); *Cervantes v. State*, 815 S.W.2d 569 (Tex.Crim.App.1991) (attempted capital murder and aggravated robbery), *cert. denied*, 502 U.S. 1110, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992); *Flores*, 906 S.W.2d at 135–36 (burglary and murder committed in the course of a burglary), *Gentry v. State*, 881 S.W.2d 35 (Tex.App.—Dallas 1994, pet. ref'd) ( attempted murder and aggravated sexual assault). Nor, as the State here argues, were these different "units of prosecution", where the state legislature at least implicitly authorized multiple punishments for the same offense. *See, e.g., Spradling v. State*, 773 S.W.2d 553, 556–57 (Tex.Crim.App.1989); *Ex Parte Rathmell* 717 S.W.2d 33, 35 (Tex.Crim.App.1986).[12]

And, this case is different from *Missouri v. Hunter*, because in that case, the Supreme Court recognized that the Missouri legislature expressly intended that a defendant who committed an offense while using a deadly weapon would receive an enhanced punishment for "armed criminal action" in addition to punishment he received for first degree robbery arising out the exact same transaction. *Missouri v. Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679, 74 L.Ed.2d at 543–44. Thus the expression of legislative intent was manifest in the statutory scheme and no double jeopardy was found. *Id.*

Our court of criminal appeals has added an additional analytical nugget to the jeopardy inquiry that buttresses our conclusion in the instant case:

> We likewise think it reasonably clear from the various opinions in *Dixon* that the essential elements relevant to a jeopardy inquiry are those of the charging instrument, not of the penal statute itself. Stat-

---

**10.** Appellant's claim clearly falls under the third category—multiple punishments for the same offense.

**11.** The *Blockburger* same-elements test was revitalized when the Supreme Court decided *U.S. v. Dixon*, overruling *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *Flores*, 906 S.W.2d at 137. To apply the same-elements test, courts must examine the statutes that define each offense to see whether each statute requires

proof of an additional fact or element the other does not. *Id.* at 136.

**12.** We recognize that a different result might have been reached had the jury been properly charged on the doctrine of transferred intent. Had that happened, the convictions would likely have been sustainable under paragraph B in both indictments, and the double jeopardy complaint would have failed under the holding in *Ex Parte Rathmell.*

utory elements will, of course, always make up a part of the accusatory pleading, but additional nonstatutory allegations are necessary in every case to specify the unique offense with which the defendant is charged.

*Parrish*, 869 S.W.2d at 354. Again, in looking solely at the charging instruments in the instant case, the allegations contained in paragraph A of both indictments are *identical* in both indictments. We believe that the *Parrish* court would thus reach the same conclusion that we now reach—the two convictions of appellant for identical counts of attempted murder violate the Double Jeopardy Clause. They constitute multiple punishments for the same offense.[13] Appellant's second point of error is sustained.

The judgment of the trial court in cause no. 94–CR–5703–A is, therefore, reversed and the cause is remanded to the trial court with instructions that the indictment be dismissed. The judgment of the trial court in cause no. 94–CR–5702–A is in all things affirmed. *See Ex Parte Crosby*, 703 S.W.2d 683, 685 (Tex.Crim.App.1986).

---

**13.** Because it has neither been briefed nor argued by either party, we do not reach the question of whether, because of the multiple gunshots (25 or 26) fired by appellant and Samudio, the State could demonstrate that the intent of the legislature would have been that, for *each* shot fired, the grand jury could have indicted for attempted murder of a person or persons unknown to the grand jury. In other words, did the legislature intend, in the instant case, under Tex. Penal Code Ann., § 15.01, that each shot fired represent a separate and distinct offense. This we leave for *another day.*