**Daniel Lee FLORES, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–03–00372–CR.**

Court of Appeals of Texas,
Eastland.

March 10, 2005.

Arthur Aguilar Jr., Lubbock, for appellant.

Ricky Smith, District Attorney, Brandi H. Fernandez, Assistant Dist. Atty's Office, Lamesa, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

W.G. ARNOT, III, Chief Justice.

The jury convicted appellant, Daniel Lee Flores, of attempted capital murder. The trial court assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. The trial court also assessed a fine of $10,000 and made an affirmative finding that appellant used a deadly weapon during the commission of the offense. Appellant attacks the legal and factual sufficiency of the evidence in a sole point of error. We affirm.

The indictment charged appellant with intentionally and knowingly attempting to cause the death of Darrell Lee Hobbs by shooting him with a firearm while Hobbs was a Texas peace officer lawfully discharging an official duty. *See* TEX. PEN. CODE ANN. § 19.03(a)(1) (Vernon Supp.

2004–2005). In compliance with the elements set out in Section 19.03(a)(1), the indictment also alleged that appellant knew Officer Hobbs was a Texas peace officer. Appellant limits his sufficiency challenges to the evidence supporting the jury's determination that he knew Officer Hobbs was a peace officer.

 In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In a factual sufficiency review, we view all of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Zuniga v. State,* 144 S.W.3d 477, 484–85 (Tex.Cr.App.2004).

Kevin Bagwell, a dispatcher with the Gaines County Sheriff's Department, testified that he received a "9–1–1" call on the evening of January 26, 2003, reporting that appellant had shot a person in the face. The call came from a residence located in Seminole. Deputy Robert Alvarado of the Gaines County Sheriff's Department and Officer Joe Mendoza of the Seminole Police Department were the first officers to arrive at the residence. Hobbs, an officer with the Seminole Police Department, arrived at the residence shortly after Deputy Alvarado and Officer Mendoza arrived. A camera mounted in Deputy Alvarado's patrol unit recorded a large portion of the ensuing dialogue between appellant and the responding officers as well as a visual depiction of a portion of the residence. The video depicts flashing lights from three patrol units parked at the residence. Deputy Alvarado testified that he also illuminated the residence with two spotlights mounted on his patrol unit. Upon reaching the front door of the residence, Officer Mendoza knocked and instructed the occupants to "[o]pen up." [1] Two females and a male exited the residence a few moments later. One of the females, appellant's mother, informed Deputy Alvarado that appellant remained inside the residence armed with a firearm. Officer Mendoza then instructed appellant to come out of the residence. Appellant replied to Officer Mendoza by yelling "[h]old on" and "[w]ait a minute."

Officer Mendoza observed appellant inside of the residence washing his hands. Appellant ran to the back of the house when Officer Mendoza called out his name. Officer Hobbs approached the back door of the residence in order to speak with appellant. Officer Hobbs held his flashlight in front of him with it turned off. As Officer Hobbs approached the back door, appellant shot him at close range with a shotgun striking him in the arm and chest. Officer Hobbs required several surgeries in order to repair his severely injured arm.

Appellant remained inside the residence for three hours after the shooting. Officer Mendoza negotiated with appellant during the standoff in an attempt to persuade appellant to surrender. During their negotiations, appellant asked Officer Mendoza: "Is the cop I shot, is he going to be okay?" Appellant also made the following statement to Mickey Brown, the chief of police of Seminole, during the standoff: "I shot Hobbs. Is he dead?" A search of

---

**1.** Deputy Alvarado, Officer Mendoza, and Officer Hobbs each testified that they knew appellant from previous encounters. Officer Hobbs took a report of property damage from appellant as recently as a month prior to the incident.

the residence after appellant's arrest led to the discovery of a deceased female, a sawed-off shotgun, and two spent shotgun shells.

Appellant did not testify at trial. His trial counsel argued to the jury that appellant did not know that the person that he shot was a police officer because it was dark. Counsel stressed the fact that Officer Hobbs was wearing a dark coat and that his flashlight was turned off at the time of the shooting. The State countered counsel's contentions by arguing that there was sufficient lighting for appellant to have observed the police officers at the residence and that Officer Hobbs's jacket had patches which indicated that he was a police officer.

■ The Texas Court of Criminal Appeals recently addressed a similar evidentiary contention in *Escamilla v. State*, 143 S.W.3d 814 (Tex.Cr.App.2004). *Escamilla* involved the shooting of an off-duty police officer at a nightclub. *Escamilla v. State, supra* at 817. Although the officer was not on duty, he was wearing a jacket which displayed the insignias of the Dallas Police Department. *Escamilla v. State, supra* at 820. Several witnesses testified that the officer was clearly identifiable as a peace officer. *Escamilla v. State, supra* at 818. With regard to the police officer's clothing, the Court of Criminal Appeals concluded that the jury could have reasonably concluded that the defendant knew that the victim was a police officer based upon the witnesses' testimony that the officer's status was clearly identifiable based upon his clothing. *Escamilla v. State, supra* at 820.

As is the situation in this appeal, the defendant in *Escamilla* also made statements about shooting a police officer after the shooting occurred. *Escamilla v. State, supra* at 819. The defendant argued that the statements did not have any evidentiary significance because he could have learned of the officer's identity after the shooting occurred. *Escamilla v. State, supra* at 820. The Court of Criminal Appeals rejected this argument by holding that the jury could have reasonably inferred that the defendant knew the police officer's status at the time of the shooting based upon these statements. *Escamilla v. State, supra* at 820.

The jury in the underlying case was presented with audio and visual evidence of the residence and the dialogue between the officers that responded and appellant. The testimony and video revealed that, at the time the shooting occurred, at least three patrol units had responded to the residence with their overhead lights activated after receiving a call that a shooting had occurred at the residence. All of the responding officers knew appellant, and one of them spoke with appellant prior to the shooting. Three persons fled the residence upon the officers' arrival. The jury was presented with evidence regarding Officer Hobbs's clothing and the lighting around the residence. The jury also heard testimony regarding comments appellant made after the shooting pertaining to his knowledge of Officer Hobbs's status as a peace officer.

Viewing the evidence presented at trial in the light most favorable to the verdict, the jury could have reasonably inferred beyond a reasonable doubt that appellant knew that his shooting victim was a police officer. *See Escamilla v. State, supra* at 820–21. Viewing all of the evidence in a neutral light, the evidence is not so weak that the verdict is clearly wrong and manifestly unjust. Furthermore, the contrary evidence is not so strong that the "beyond a reasonable doubt" standard of proof could not have been met. Appellant's sole point of error is overruled.

The judgment of the trial court is affirmed.