IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00193-CV

 

Sue Walston,

                                                                      Appellant

 v.

 

Larry Walston, ET AL.,

                                                                      Appellees

 

 

 



From the 19th District Court

McLennan County, Texas

Trial Court No. 92-3724-1

 



ORDER



 








          Only a portion of the reporter’s
record has been filed to date in this appeal.  The Clerk of this Court notified
Appellant by letter dated September 30, 2005 that the remainder of the
reporter’s record had not been filed because Appellant had failed to pay the
reporter’s fee for preparation of the record and that the necessary
arrangements for payment of the fee must be made within twenty-one days or the
appeal would be submitted on the clerk’s record alone.  See Tex. R. App. P. 37.3(c).

          Appellant responded with a motion
filed on October 21 in which she requested that: (1) the Court suspend or
vacate the Clerk’s September 30 notice; or (2) her time for responding to the
September 30 notice be extended until twenty-one days after the Court ruled on
her motion to abate the appeal, which was then pending.  The Court denied the
motion to abate on October 26.  On the same date, the Clerk notified Appellant
that she must make the necessary arrangements for payment of the reporter’s fee
within seven days and notified the parties that the remainder of the reporter’s
record was due within thirty days.

          Appellant filed a response on November
2 advising the Court that she had filed an indigence affidavit with the trial
court clerk on August 16, that Appellee Larry Walston had filed a contest two
days later, and that the trial court had not ruled on the contest.  Appellant
concludes in her November 2 response “that, pursuant to Rule 20.1(i)(4) of the Tex. R. App. Proc., she is entitled to
proceed without advance payment of costs.”  We disagree.

          The judgment being appealed was signed
on January 6, 2005.  Appellant timely filed a motion for new trial.  Therefore,
the notice of appeal was due on or before April 6, 2005.  See Tex. R. App. P. 26.1(a)(1).

          Appellant’s indigence affidavit was
due “with or before the notice of appeal.”  Id. 20.1(c)(1).  However,
Appellant did not file her indigence affidavit until more than four months
after it was due.  Therefore, the affidavit is untimely.  Id.

          Because Appellant did not timely file
an affidavit of indigence, she will not be permitted to proceed without advance
payment of costs.  See Mikkilineni v. City of Houston, 4 S.W.3d 298, 299
(Tex. App.—Houston [1st Dist.] 1999, order, pet. denied) (per curiam).

          Accordingly, Appellant is ordered to
pay the reporter or make arrangements to pay the reporter’s fee within fourteen
(14) days after the date of this Order.  If this is not done, the appeal will
be submitted only on the clerk’s record and the partial reporter’s record filed
in this Court on July 28, 2005.  See Tex.
R. App. P. 37.3(c)(2).

PER CURIAM

Before Justice Vance
and

Justice
Reyna

Order issued and filed
February 10, 2006

[CV06]

 

 

 

 






oes appear that the failure to include cause number 17804 on the notice of
appeal may have been a clerical error on the part of Ruffin’s counsel. 
However, Ruffin’s brief has been on file since November 2006.  Thus, the time
for amending the notice of appeal has elapsed.  See Tex. R. App. P. 25.2(f).  Accordingly,
because Ruffin did not perfect an appeal from his conviction in trial court
cause number 17804 for the aggravated assault of Gary Medford, we leave that
conviction undisturbed.  Cf. Plas-Tex., Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 446 (Tex. 1989) (“Generally, when one party appeals from a
judgment, a reversal as to that party will not justify a reversal as to other
nonappealing parties.”).

 

Expert Testimony

            Ruffin contends in his first issue
that the court abused its discretion by excluding expert testimony that because
of mental illness Ruffin did not know he was shooting at law enforcement
officers.

            By offer of proof, Ruffin called a
psychologist, Dr. William Carter, to testify to his mental status during the
standoff.  Carter testified that Ruffin “was in a severe psychological decline”
during the weeks and months preceding the standoff, leading to a “deep
depression.”  In Carter’s opinion, Ruffin “eventually developed a condition
known as major depression with psychotic features” which caused him to lose
“contact with reality much of the time.”  Carter believed that on the night of
the standoff Ruffin was experiencing “delusional thinking psychosis and
paranoia” which caused him to see and hear things.  On cross-examination,
Carter testified that Ruffin was not legally insane at the time of the standoff
but had “diminished capacity” which affected his ability to make rational
judgments.

            Ruffin offered Carter’s testimony as
evidence of diminished capacity “to negate the mens rea elements” under
article 38.36 of the Code of Criminal Procedure and Jackson v. State. 
160 S.W.3d 568 (Tex. Crim. App. 2005).  The trial court sustained the State’s
objection to this testimony.  Ruffin now contends that the evidence should have
been admitted as relevant to the issue of whether Ruffin knew he was shooting at
law enforcement officers.  The State responds that Ruffin’s appellate complaint
does not comport with the theory of admissibility he urged at trial.

            Under the indictments in Ruffin’s
cases, there were two “mens rea elements” in each case.  First, the
State had to prove that Ruffin “intentionally or knowingly” threatened each
complainant.  And second, the State had to prove that Ruffin “did then and
there know” that each complainant was a public servant.[1] 
See Hughes v. State, 897 S.W.2d 285, 295 (Tex. Crim. App. 1994) (in
prosecution for capital murder of peace officer, “[t]he State was required to
prove that appellant intentionally or knowingly caused the death of the
deceased (result of conduct), and that appellant knew the deceased was a peace
officer (circumstances surrounding the conduct)”); Ester v. State, 151
S.W.3d 660, 663-64 (Tex. App.—Waco 2004, no pet.) (elements for evading arrest
are “(1) a person, (2) intentionally flees, (3) from a peace officer,
(4) with knowledge he or she is a peace officer, (5) the peace officer
is attempting to arrest or detain the person, and (6) the attempted arrest or
detention is lawful”) (emphases added).

            Therefore, because one of the required
“mens rea elements” was knowledge that that each complainant was a
public servant and because Ruffin argued that the evidence was admissible “to
negate the mens rea elements,” we hold that Ruffin’s appellate complaint
adequately comports with the theory of admissibility urged at trial.

            However, as the State also contends,
article 38.36 of the Code of Criminal Procedure applies only to murder
prosecutions.  See Tex. Code
Crim. Proc. Ann. art. 38.36 (Vernon 2005).  The Court of Criminal
Appeals expressly referenced article 38.36 to support the proposition that “sometimes 
.  .  .  evidence of a defendant's history of mental illness” may be offered
“to negate the mens rea element.”  Jackson, 160 S.W.3d at 574.
(emphasis added)  Accordingly, we hold that evidence of mental
illness/diminished capacity is admissible “to negate the mens rea
element” only in a homicide case.  See Fleece v. State, No.
02-05-308-CR, 2006 WL 3627145, at *3 (Tex. App.—Fort Worth Dec. 14, 2006, no pet.)
(not designated for publication) (“There is no analogue to article 38.36(a)
that specifically makes mental-illness evidence relevant to prosecutions for
debit card abuse and unauthorized use of a motor vehicle.”).  Thus, in a
prosecution for an offense other than homicide, if the defendant is not
pursuing an insanity defense, such evidence is not admissible.  See Nejnaoui
v. State, 44 S.W.3d 111, 117-18 (Tex. App.—Houston [14th Dist.] 2001, pet.
ref’d).

            Therefore, because Ruffin was not
being prosecuted for homicide and was not pursuing an insanity defense, the
court did not abuse its discretion by sustaining the State’s objection to Dr.
Carter’s testimony.  Ruffin’s first issue is overruled.

Legal Insufficiency

            Ruffin contends in his second issue
that the evidence is legally insufficient to prove that he knew the
complainants in appellate cause nos. 10-06-218-CR, 10-06-220-CR, and
10-06-222-CR (trial court cause nos. 17799, 17801, and 17803) were public
servants.[2] 
This contention is based on the prosecutor’s “concession” in closing argument
that the State “didn’t prove” Ruffin knew these complainants were public
servants.

            In reviewing a claim of legal
insufficiency, we view all of the evidence in a light most favorable to the
verdict and determine whether any rational trier of fact could have found the
essential element beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Sells v.
State, 121 S.W.3d 748, 753-54 (Tex. Crim. App. 2003).

            Aside from uncontroverted statements
regarding occurrences in the courtroom, statements of counsel are not generally
treated as evidence.  See Modica v. State, 151 S.W.3d 716, 729 (Tex.
App.—Beaumont 2004, pet. ref’d); see also Thieleman v. State, 187 S.W.3d
455, 456-58 (Tex. Crim. App. 2005) (uncontradicted statement of counsel
regarding occurrence in courtroom “provides some evidence of the fact of
occurrence”).  In addition, courts are not generally bound by a party’s
concessions.  See Nickerson v. State, 69 S.W.3d 661, 668 (Tex. App.—Waco 2002, pet. ref’d).

            Deputy Brown testified that Ruffin
knew her personally because she had previously worked as a security officer at
a business he owned.  Ruffin also knew that she was a licensed peace officer. 
She identified herself to Ruffin on several occasions during the encounter, and
Ruffin acknowledged that he knew who she was when he warned her to leave the
premises.  Several of the officers who drove patrol cars to the scene had their
overhead lights activated when they arrived at the premises.  The headlights of
some of the officers’ vehicles illuminated the distinctive law enforcement
markings of patrol cars already on the premises and illuminated deputies on the
premises who were in uniform.  Ruffin left his house at some point during the
encounter and fired shots at the officers from the trees outside his home,
forcing the officers to retreat.  Ruffin also fired shots at a Department of
Public Safety helicopter which flew over his property early that morning trying
to establish his location on the property with heat-seeking equipment.

“[D]irect evidence of the elements of the offense
is not required.  Juries are permitted to make reasonable inferences from the
evidence presented at trial, and circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor.  Circumstantial evidence
alone can be sufficient to establish guilt.”  Hooper v. State, 214
S.W.3d 9, 14-15 (Tex. Crim. App. 2007).

Viewing the evidence in the light most favorable
to the verdict, a rational juror could have reasonably inferred that Ruffin
knew his acquaintance Deputy Brown and other law enforcement officers had
surrounded his home.  Thus, a rational juror could have found beyond a
reasonable doubt that Ruffin knew there were public servants on his property
and that he possessed this knowledge as he fired shots from his house and from
the trees outside his house.  See Flores v. State, 164 S.W.3d 435,
436-37 (Tex. App.—Eastland 2005, pet. ref’d); Manrique v. State, 943
S.W.2d 115, 119 (Tex. App.—San Antonio 1997) (“firing of at least 26 rounds of
ammunition from an AK-47 assault rifle at a residential dwelling at 4 A.M. was
sufficient to demonstrate that appellant intentionally and knowingly attempted
to cause the death of person(s) unknown to the grand jury”), rev’d in part
on other grounds, 994 S.W.2d 640 (Tex. Crim. App. 1999);[3]
Ishmael v. State, 688 S.W.2d 252, 258 (Tex. App.—Fort Worth 1985, pet.
ref’d) (“When a person fires a gun into a crowd of people with no particular
intended victim, the probability that serious bodily injury will result is so
great that it is worse than reckless disregard of the consequences; if a death
is thus caused, it is murder.”); see also Hooper, 214 S.W.3d at 15-16
(discussing how jurors may draw “multiple reasonable inferences” from the
evidence).

            Accordingly, we hold that the evidence
is legally sufficient to support the jury’s findings that Ruffin knew Deputies Helms,
Morgan and Blakely were public servants.  Therefore, we overrule Ruffin’s
second issue.

Factual Insufficiency

            Ruffin contends in his third issue
that the evidence is factually insufficient to support the convictions
regarding Deputies Helms, Morgan and Blakely for the same reason.

            In a factual insufficiency review, we
ask whether a neutral review of all the evidence, though legally sufficient,
demonstrates either that the proof of guilt is so weak or that conflicting
evidence is so strong as to render the factfinder’s verdict clearly wrong and
manifestly unjust.  Watson v. State, 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006).

We have already outlined the evidence supporting
the verdict.  The evidence to the contrary is primarily that these deputies
were dressed in black and there was testimony from at least one of them that
Ruffin was probably unable to see them in the dark.  There is no testimony that
any of the officers on the scene identified himself or herself as a law
enforcement officer or announced that law enforcement officers were present.  (E.g.,
“This is the police.  Come out with your hands up.”).

We acknowledge that the State’s evidence on this
issue cannot be characterized as overwhelming.  Nevertheless, we cannot say
that the supporting evidence is so weak or that conflicting evidence is so
strong as to render the factfinder’s verdict clearly wrong and manifestly
unjust.  See Flores, 164 S.W.3d at 437; see also Watson, 204
S.W.3d. at 414-15.  Accordingly, we overrule Ruffin’s third issue.

We affirm the judgments.

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed August 8, 2007

Publish

[CR25]









[1]
              Each indictment alleges in
pertinent part that Ruffin “did then and there intentionally or knowingly
threaten [the complainant] with imminent bodily injury by firing gunshots, and
did then and there use or exhibit a deadly weapon, to-wit: a firearm, during
the commission of said assault, and the defendant did then and there know that
[the complainant] was then and there a public servant  .  .  .  and that [the
complainant] was then and there lawfully discharging an official duty.”





[2]
              Those complainants are
Deputies Helms, Morgan, and Blakely.  Although Ruffin purports to challenge the
legal sufficiency of the evidence to support his conviction in trial court
cause no. 17804 (aggravated assault of Deputy Medford), he did not perfect an
appeal from that conviction.





[3]
              The Court of Criminal Appeals
affirmed the San Antonio Court’s legal sufficiency analysis but reversed on
double jeopardy grounds.  Manrique v. State, 994 S.W.2d 640, 642-43
(Tex. Crim. App. 1999).  As the Court of Criminal Appeals observed, “The
appellant was trying to ‘light up’ a house that contained more than four
people, and he and his companion fired at least 26 shots.  It seems reasonable
to 

conclude that more than one unknown person could have been the
objects of these murderous acts.”  Id.