Stephen RUFFIN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 10–06–00215–CR to
10–06–00222–CR.

Court of Appeals of Texas,
Waco.

Aug. 8, 2007.

Franklyn (Mick) Mickelsen, Broden & Mickelsen, Dallas, for appellant.

David A. Castillo, Coryell County Dist. Atty., Gatesville, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

In a consolidated trial, a jury convicted Stephen Ruffin of nine charges of aggravated assault on a public servant for shooting at law enforcement officers during a standoff at his house. The jury assessed his punishment at ten years' imprisonment for each charge. Ruffin contends in three issues that: (1) the court abused its discretion by excluding expert testimony that because of mental illness Ruffin did not know he was shooting at law enforcement officers; (2) the evidence is legally insufficient to prove that Ruffin committed three of the charged offenses because the prosecutor conceded in closing argument that he "didn't prove" those allegations; and (3) because of the prosecutor's concession, the evidence is factually insufficient to prove Ruffin committed those three offenses. We will affirm.

## Background

Around midnight on the occasion in question, two sheriff's deputies responded to a call from Ruffin's neighbor that shots were being fired on Ruffin's property. They approached Ruffin's house but retreated behind their patrol cars after he fired a couple of shots. Deputy Carol Brown, whom Ruffin knew, yelled out identifying herself by her first name. Ruffin yelled back to confirm her identity then added, "Carol, get the hell out of here before you get hurt." He then fired more shots in the direction of the deputies, who called for backup. Other officers arrived throughout the night. Ruffin declared that he was imposing "martial law" on his property and fired shots in the officers' direction with some frequency.

A SWAT team and a negotiator from the Waco Police Department arrived around six o'clock in the morning. The negotiator spent most of the morning trying to establish contact with Ruffin by telephone. Meanwhile, members of the SWAT team spent the morning establishing tactical positions on the outside of Ruffin's house. The negotiator got Ruffin on the telephone shortly before 11:00. Ruffin exited his house while talking to the negotiator. The SWAT team converged on him and took him in custody.

## Notice of Appeal

Ruffin was convicted in trial court cause numbers 17796, 17797, 17798, 17799, 17800, 17801, 17802, 17803 and 17804. He filed a single notice of appeal listing all but one of these cause numbers: 17804. Trial court cause number 17804 involves the complainant Gary Medford. Thus, Ruffin failed to perfect an appeal from his conviction for the aggravated assault of Gary Medford.

The Court of Criminal Appeals has stated that the appellate rules are intended "to prevent trivial, repairable mistakes or defects from divesting appellate courts of the jurisdiction to consider the merits of both State and defense appeals in criminal cases. Defective notices of appeal may now be amended 'at any time before the appealing party's brief is filed[.]'" *Few v. State*, 230 S.W.3d 184, 187 (Tex.Crim.App., 2007) (quoting Tex.R.App. P. 25.2(f)).

Here, no appeal is being dismissed. It does appear that the failure to include cause number 17804 on the notice of appeal may have been a clerical error on the part of Ruffin's counsel. However, Ruffin's brief has been on file since November 2006. Thus, the time for amending the notice of appeal has elapsed. *See* Tex. R.App. P. 25.2(f). Accordingly, because Ruffin did not perfect an appeal from his conviction in trial court cause number 17804 for the aggravated assault of Gary Medford, we leave that conviction undisturbed. *Cf. Plas–Tex., Inc. v. U.S. Steel*

*Corp.*, 772 S.W.2d 442, 446 (Tex.1989) ("Generally, when one party appeals from a judgment, a reversal as to that party will not justify a reversal as to other nonappealing parties.").

### Expert Testimony

■ Ruffin contends in his first issue that the court abused its discretion by excluding expert testimony that because of mental illness Ruffin did not know he was shooting at law enforcement officers.

By offer of proof, Ruffin called a psychologist, Dr. William Carter, to testify to his mental status during the standoff. Carter testified that Ruffin "was in a severe psychological decline" during the weeks and months preceding the standoff, leading to a "deep depression." In Carter's opinion, Ruffin "eventually developed a condition known as major depression with psychotic features" which caused him to lose "contact with reality much of the time." Carter believed that on the night of the standoff Ruffin was experiencing "delusional thinking psychosis and paranoia" which caused him to see and hear things. On cross-examination, Carter testified that Ruffin was not legally insane at the time of the standoff but had "diminished capacity" which affected his ability to make rational judgments.

Ruffin offered Carter's testimony as evidence of diminished capacity "to negate the *mens rea* elements" under article 38.36 of the Code of Criminal Procedure and *Jackson v. State.* 160 S.W.3d 568 (Tex. Crim.App.2005). The trial court sustained the State's objection to this testimony. Ruffin now contends that the evidence

should have been admitted as relevant to the issue of whether Ruffin knew he was shooting at law enforcement officers. The State responds that Ruffin's appellate complaint does not comport with the theory of admissibility he urged at trial.

Under the indictments in Ruffin's cases, there were two *"mens rea* elements" in each case. First, the State had to prove that Ruffin "intentionally or knowingly" threatened each complainant. And second, the State had to prove that Ruffin "did then and there know" that each complainant was a public servant.[1] *See Hughes v. State,* 897 S.W.2d 285, 295 (Tex. Crim.App.1994) (in prosecution for capital murder of peace officer, "[t]he State was required to prove that appellant intentionally or knowingly caused the death of the deceased (result of conduct), and that appellant knew the deceased was a peace officer (circumstances surrounding the conduct)"); *Ester v. State,* 151 S.W.3d 660, 663–64 (Tex.App.-Waco 2004, no pet.) (elements for evading arrest are "(1) a person, (2) *intentionally flees,* (3) from a peace officer, (4) *with knowledge he or she is a peace officer,* (5) the peace officer is attempting to arrest or detain the person, and (6) the attempted arrest or detention is lawful") (emphases added).

Therefore, because one of the required *"mens rea* elements" was knowledge that each complainant was a public servant and because Ruffin argued that the evidence was admissible "to negate the *mens rea* elements," we hold that Ruffin's appellate complaint adequately comports with the theory of admissibility urged at trial.

---

1. Each indictment alleges in pertinent part that Ruffin "did then and there intentionally or knowingly threaten [the complainant] with imminent bodily injury by firing gunshots, and did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault, and the defendant did then and there know that [the complainant] was then and there a public servant ... and that [the complainant] was then and there lawfully discharging an official duty."

■ However, as the State also contends, article 38.36 of the Code of Criminal Procedure applies only to murder prosecutions. *See* TEX.CODE CRIM. PROC. ANN. art. 38.36 (Vernon 2005). The Court of Criminal Appeals expressly referenced article 38.36 to support the proposition that "*sometimes* ... evidence of a defendant's history of mental illness" may be offered "to negate the *mens rea* element." *Jackson*, 160 S.W.3d at 574. (emphasis added) Accordingly, we hold that evidence of mental illness/diminished capacity is admissible "to negate the *mens rea* element" only in a homicide case. *See Fleece v. State*, No. 02–05–308–CR, 2006 WL 3627145, at *3 (Tex.App.-Fort Worth Dec.14, 2006, no pet.) (not designated for publication) ("There is no analogue to article 38.36(a) that specifically makes mental-illness evidence relevant to prosecutions for debit card abuse and unauthorized use of a motor vehicle."). Thus, in a prosecution for an offense other than homicide, if the defendant is not pursuing an insanity defense, such evidence is not admissible. *See Nejnaoui v. State*, 44 S.W.3d 111, 117–18 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd).

Therefore, because Ruffin was not being prosecuted for homicide and was not pursuing an insanity defense, the court did not abuse its discretion by sustaining the State's objection to Dr. Carter's testimony. Ruffin's first issue is overruled.

### Legal Insufficiency

■ Ruffin contends in his second issue that the evidence is legally insufficient to prove that he knew the complainants in appellate cause nos. 10–06–218–CR, 10–06–220–CR, and 10–06–222–CR (trial court cause nos. 17799, 17801, and 17803) were public servants.[2] This contention is based on the prosecutor's "concession" in closing argument that the State "didn't prove" Ruffin knew these complainants were public servants.

In reviewing a claim of legal insufficiency, we view all of the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Sells v. State*, 121 S.W.3d 748, 753–54 (Tex.Crim.App. 2003).

■ Aside from uncontroverted statements regarding occurrences in the courtroom, statements of counsel are not generally treated as evidence. *See Modica v. State*, 151 S.W.3d 716, 729 (Tex.App.-Beaumont 2004, pet. ref'd); *see also Thieleman v. State*, 187 S.W.3d 455, 456–58 (Tex. Crim.App.2005) (uncontradicted statement of counsel regarding occurrence in courtroom "provides *some* evidence of the fact of occurrence"). In addition, courts are not generally bound by a party's concessions. *See Nickerson v. State*, 69 S.W.3d 661, 668 (Tex.App.-Waco 2002, pet. ref'd).

Deputy Brown testified that Ruffin knew her personally because she had previously worked as a security officer at a business he owned. Ruffin also knew that she was a licensed peace officer. She identified herself to Ruffin on several occasions during the encounter, and Ruffin acknowledged that he knew who she was when he warned her to leave the premises. Several of the officers who drove patrol cars to the scene had their overhead lights

2. Those complainants are Deputies Helms, Morgan, and Blakely. Although Ruffin purports to challenge the legal sufficiency of the evidence to support his conviction in trial court cause no. 17804 (aggravated assault of Deputy Medford), he did not perfect an appeal from that conviction.

activated when they arrived at the premises. The headlights of some of the officers' vehicles illuminated the distinctive law enforcement markings of patrol cars already on the premises and illuminated deputies on the premises who were in uniform. Ruffin left his house at some point during the encounter and fired shots at the officers from the trees outside his home, forcing the officers to retreat. Ruffin also fired shots at a Department of Public Safety helicopter which flew over his property early that morning trying to establish his location on the property with heat-seeking equipment.

 "[D]irect evidence of the elements of the offense is not required. Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. Circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex.Crim.App.2007).

Viewing the evidence in the light most favorable to the verdict, a rational juror could have reasonably inferred that Ruffin knew his acquaintance Deputy Brown and other law enforcement officers had surrounded his home. Thus, a rational juror could have found beyond a reasonable doubt that Ruffin knew there were public servants on his property and that he possessed this knowledge as he fired shots from his house and from the trees outside his house. *See Flores v. State*, 164 S.W.3d 435, 436–37 (Tex.App.-Eastland 2005, pet. ref'd); *Manrique v. State*, 943 S.W.2d 115, 119 (Tex.App.-San Antonio 1997) ("firing of

at least 26 rounds of ammunition from an AK–47 assault rifle at a residential dwelling at 4 A.M. was sufficient to demonstrate that appellant intentionally and knowingly attempted to cause the death of person(s) unknown to the grand jury"), *rev'd in part on other grounds*, 994 S.W.2d 640 (Tex. Crim.App.1999);[3] *Ishmael v. State*, 688 S.W.2d 252, 258 (Tex.App.-Fort Worth 1985, pet. ref'd) ("When a person fires a gun into a crowd of people with no particular intended victim, the probability that serious bodily injury will result is so great that it is worse than reckless disregard of the consequences; if a death is thus caused, it is murder."); *see also Hooper*, 214 S.W.3d at 15–16 (discussing how jurors may draw "multiple reasonable inferences" from the evidence).

Accordingly, we hold that the evidence is legally sufficient to support the jury's findings that Ruffin knew Deputies Helms, Morgan and Blakely were public servants. Therefore, we overrule Ruffin's second issue.

### Factual Insufficiency

Ruffin contends in his third issue that the evidence is factually insufficient to support the convictions regarding Deputies Helms, Morgan and Blakely for the same reason.

In a factual insufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim.App.2006).

---

3. The Court of Criminal Appeals affirmed the San Antonio Court's legal sufficiency analysis but reversed on double jeopardy grounds. *Manrique v. State*, 994 S.W.2d 640, 642–43 (Tex.Crim.App.1999). As the Court of Criminal Appeals observed, "The appellant was trying to 'light up' a house that contained more than four people, and he and his companion fired at least 26 shots. It seems reasonable to conclude that more than one unknown person could have been the objects of these murderous acts." *Id.*

We have already outlined the evidence supporting the verdict. The evidence to the contrary is primarily that these deputies were dressed in black and there was testimony from at least one of them that Ruffin was probably unable to see them in the dark. There is no testimony that any of the officers on the scene identified himself or herself as a law enforcement officer or announced that law enforcement officers were present. (*E.g.*, "This is the police. Come out with your hands up.").

We acknowledge that the State's evidence on this issue cannot be characterized as overwhelming. Nevertheless, we cannot say that the supporting evidence is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *See Flores,* 164 S.W.3d at 437; *see also Watson,* 204 S.W.3d. at 414–15. Accordingly, we overrule Ruffin's third issue.

We affirm the judgments.