IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



Nos. 10-06-00215-CR through
10-06-00222-CR

 

Stephen Ruffin,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 52nd District Court

Coryell County, Texas

Trial Court Nos. 17796 through
17803

 



Opinion



 








            In a consolidated trial, a jury
convicted Stephen Ruffin of nine charges of aggravated assault on a public
servant for shooting at law enforcement officers during a standoff at his
house.  The jury assessed his punishment at ten years’ imprisonment for each
charge.  Ruffin contends in three issues that: (1) the court abused its
discretion by excluding expert testimony that because of mental illness Ruffin did
not know he was shooting at law enforcement officers; (2) the evidence is
legally insufficient to prove that Ruffin committed three of the charged
offenses because the prosecutor conceded in closing argument that he “didn’t
prove” those allegations; and (3) because of the prosecutor’s concession, the
evidence is factually insufficient to prove Ruffin committed those three
offenses.  We will affirm.

Background

            Around midnight on the occasion in
question, two sheriff’s deputies responded to a call from Ruffin’s neighbor
that shots were being fired on Ruffin’s property.  They approached Ruffin’s
house but retreated behind their patrol cars after he fired a couple of shots. 
Deputy Carol Brown, whom Ruffin knew, yelled out identifying herself by her
first name.  Ruffin yelled back to confirm her identity then added, “Carol, get
the hell out of here before you get hurt.”  He then fired more shots in the
direction of the deputies, who called for backup.  Other officers arrived
throughout the night.  Ruffin declared that he was imposing “martial law” on
his property and fired shots in the officers’ direction with some frequency.

            A SWAT team and a negotiator from the
Waco Police Department arrived around six o’clock in the morning.  The
negotiator spent most of the morning trying to establish contact with Ruffin by
telephone.  Meanwhile, members of the SWAT team spent the morning establishing
tactical positions on the outside of Ruffin’s house.  The negotiator got Ruffin
on the telephone shortly before 11:00.  Ruffin exited his house while talking
to the negotiator.  The SWAT team converged on him and took him in custody.

 

 

Notice of Appeal

            Ruffin was convicted in trial court
cause numbers 17796, 17797, 17798, 17799, 17800, 17801, 17802, 17803 and
17804.  He filed a single notice of appeal listing all but one of these cause
numbers: 17804.  Trial court cause number 17804 involves the complainant Gary
Medford.  Thus, Ruffin failed to perfect an appeal from his conviction for the
aggravated assault of Gary Medford.

            The Court of Criminal Appeals has
stated that the appellate rules are intended “to prevent trivial, repairable mistakes
or defects from divesting appellate courts of the jurisdiction to consider the
merits of both State and defense appeals in criminal cases.  Defective notices
of appeal may now be amended ‘at any time before the appealing party’s brief is
filed[.]’”  Few v. State, No. PD-866-06, 2007 WL 677230, at *3 (Tex. Crim. App. Mar. 7, 2007) (quoting Tex. R. App.
P. 25.2(f)).

            Here, no appeal is being dismissed. 
It does appear that the failure to include cause number 17804 on the notice of
appeal may have been a clerical error on the part of Ruffin’s counsel. 
However, Ruffin’s brief has been on file since November 2006.  Thus, the time
for amending the notice of appeal has elapsed.  See Tex. R. App. P. 25.2(f).  Accordingly,
because Ruffin did not perfect an appeal from his conviction in trial court
cause number 17804 for the aggravated assault of Gary Medford, we leave that
conviction undisturbed.  Cf. Plas-Tex., Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 446 (Tex. 1989) (“Generally, when one party appeals from a
judgment, a reversal as to that party will not justify a reversal as to other
nonappealing parties.”).

 

Expert Testimony

            Ruffin contends in his first issue
that the court abused its discretion by excluding expert testimony that because
of mental illness Ruffin did not know he was shooting at law enforcement
officers.

            By offer of proof, Ruffin called a
psychologist, Dr. William Carter, to testify to his mental status during the
standoff.  Carter testified that Ruffin “was in a severe psychological decline”
during the weeks and months preceding the standoff, leading to a “deep
depression.”  In Carter’s opinion, Ruffin “eventually developed a condition
known as major depression with psychotic features” which caused him to lose
“contact with reality much of the time.”  Carter believed that on the night of
the standoff Ruffin was experiencing “delusional thinking psychosis and
paranoia” which caused him to see and hear things.  On cross-examination,
Carter testified that Ruffin was not legally insane at the time of the standoff
but had “diminished capacity” which affected his ability to make rational
judgments.

            Ruffin offered Carter’s testimony as
evidence of diminished capacity “to negate the mens rea elements” under
article 38.36 of the Code of Criminal Procedure and Jackson v. State. 
160 S.W.3d 568 (Tex. Crim. App. 2005).  The trial court sustained the State’s
objection to this testimony.  Ruffin now contends that the evidence should have
been admitted as relevant to the issue of whether Ruffin knew he was shooting at
law enforcement officers.  The State responds that Ruffin’s appellate complaint
does not comport with the theory of admissibility he urged at trial.

            Under the indictments in Ruffin’s
cases, there were two “mens rea elements” in each case.  First, the
State had to prove that Ruffin “intentionally or knowingly” threatened each
complainant.  And second, the State had to prove that Ruffin “did then and
there know” that each complainant was a public servant.[1] 
See Hughes v. State, 897 S.W.2d 285, 295 (Tex. Crim. App. 1994) (in
prosecution for capital murder of peace officer, “[t]he State was required to
prove that appellant intentionally or knowingly caused the death of the
deceased (result of conduct), and that appellant knew the deceased was a peace
officer (circumstances surrounding the conduct)”); Ester v. State, 151
S.W.3d 660, 663-64 (Tex. App.—Waco 2004, no pet.) (elements for evading arrest
are “(1) a person, (2) intentionally flees, (3) from a peace officer,
(4) with knowledge he or she is a peace officer, (5) the peace officer
is attempting to arrest or detain the person, and (6) the attempted arrest or
detention is lawful”) (emphases added).

            Therefore, because one of the required
“mens rea elements” was knowledge that that each complainant was a
public servant and because Ruffin argued that the evidence was admissible “to
negate the mens rea elements,” we hold that Ruffin’s appellate complaint
adequately comports with the theory of admissibility urged at trial.

            However, as the State also contends,
article 38.36 of the Code of Criminal Procedure applies only to murder
prosecutions.  See Tex. Code
Crim. Proc. Ann. art. 38.36 (Vernon 2005).  The Court of Criminal
Appeals expressly referenced article 38.36 to support the proposition that “sometimes 
.  .  .  evidence of a defendant's history of mental illness” may be offered
“to negate the mens rea element.”  Jackson, 160 S.W.3d at 574.
(emphasis added)  Accordingly, we hold that evidence of mental
illness/diminished capacity is admissible “to negate the mens rea
element” only in a homicide case.  See Fleece v. State, No.
02-05-308-CR, 2006 WL 3627145, at *3 (Tex. App.—Fort Worth Dec. 14, 2006, no pet.)
(not designated for publication) (“There is no analogue to article 38.36(a)
that specifically makes mental-illness evidence relevant to prosecutions for
debit card abuse and unauthorized use of a motor vehicle.”).  Thus, in a
prosecution for an offense other than homicide, if the defendant is not
pursuing an insanity defense, such evidence is not admissible.  See Nejnaoui
v. State, 44 S.W.3d 111, 117-18 (Tex. App.—Houston [14th Dist.] 2001, pet.
ref’d).

            Therefore, because Ruffin was not
being prosecuted for homicide and was not pursuing an insanity defense, the
court did not abuse its discretion by sustaining the State’s objection to Dr.
Carter’s testimony.  Ruffin’s first issue is overruled.

Legal Insufficiency

            Ruffin contends in his second issue
that the evidence is legally insufficient to prove that he knew the
complainants in appellate cause nos. 10-06-218-CR, 10-06-220-CR, and
10-06-222-CR (trial court cause nos. 17799, 17801, and 17803) were public
servants.[2] 
This contention is based on the prosecutor’s “concession” in closing argument
that the State “didn’t prove” Ruffin knew these complainants were public
servants.

            In reviewing a claim of legal
insufficiency, we view all of the evidence in a light most favorable to the
verdict and determine whether any rational trier of fact could have found the
essential element beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Sells v.
State, 121 S.W.3d 748, 753-54 (Tex. Crim. App. 2003).

            Aside from uncontroverted statements
regarding occurrences in the courtroom, statements of counsel are not generally
treated as evidence.  See Modica v. State, 151 S.W.3d 716, 729 (Tex.
App.—Beaumont 2004, pet. ref’d); see also Thieleman v. State, 187 S.W.3d
455, 456-58 (Tex. Crim. App. 2005) (uncontradicted statement of counsel
regarding occurrence in courtroom “provides some evidence of the fact of
occurrence”).  In addition, courts are not generally bound by a party’s
concessions.  See Nickerson v. State, 69 S.W.3d 661, 668 (Tex. App.—Waco 2002, pet. ref’d).

            Deputy Brown testified that Ruffin
knew her personally because she had previously worked as a security officer at
a business he owned.  Ruffin also knew that she was a licensed peace officer. 
She identified herself to Ruffin on several occasions during the encounter, and
Ruffin acknowledged that he knew who she was when he warned her to leave the
premises.  Several of the officers who drove patrol cars to the scene had their
overhead lights activated when they arrived at the premises.  The headlights of
some of the officers’ vehicles illuminated the distinctive law enforcement
markings of patrol cars already on the premises and illuminated deputies on the
premises who were in uniform.  Ruffin left his house at some point during the
encounter and fired shots at the officers from the trees outside his home,
forcing the officers to retreat.  Ruffin also fired shots at a Department of
Public Safety helicopter which flew over his property early that morning trying
to establish his location on the property with heat-seeking equipment.

“[D]irect evidence of the elements of the offense
is not required.  Juries are permitted to make reasonable inferences from the
evidence presented at trial, and circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor.  Circumstantial evidence
alone can be sufficient to establish guilt.”  Hooper v. State, 214
S.W.3d 9, 14-15 (Tex. Crim. App. 2007).

Viewing the evidence in the light most favorable
to the verdict, a rational juror could have reasonably inferred that Ruffin
knew his acquaintance Deputy Brown and other law enforcement officers had
surrounded his home.  Thus, a rational juror could have found beyond a
reasonable doubt that Ruffin knew there were public servants on his property
and that he possessed this knowledge as he fired shots from his house and from
the trees outside his house.  See Flores v. State, 164 S.W.3d 435,
436-37 (Tex. App.—Eastland 2005, pet. ref’d); Manrique v. State, 943
S.W.2d 115, 119 (Tex. App.—San Antonio 1997) (“firing of at least 26 rounds of
ammunition from an AK-47 assault rifle at a residential dwelling at 4 A.M. was
sufficient to demonstrate that appellant intentionally and knowingly attempted
to cause the death of person(s) unknown to the grand jury”), rev’d in part
on other grounds, 994 S.W.2d 640 (Tex. Crim. App. 1999);[3]
Ishmael v. State, 688 S.W.2d 252, 258 (Tex. App.—Fort Worth 1985, pet.
ref’d) (“When a person fires a gun into a crowd of people with no particular
intended victim, the probability that serious bodily injury will result is so
great that it is worse than reckless disregard of the consequences; if a death
is thus caused, it is murder.”); see also Hooper, 214 S.W.3d at 15-16
(discussing how jurors may draw “multiple reasonable inferences” from the
evidence).

            Accordingly, we hold that the evidence
is legally sufficient to support the jury’s findings that Ruffin knew Deputies Helms,
Morgan and Blakely were public servants.  Therefore, we overrule Ruffin’s
second issue.

Factual Insufficiency

            Ruffin contends in his third issue
that the evidence is factually insufficient to support the convictions
regarding Deputies Helms, Morgan and Blakely for the same reason.

            In a factual insufficiency review, we
ask whether a neutral review of all the evidence, though legally sufficient,
demonstrates either that the proof of guilt is so weak or that conflicting
evidence is so strong as to render the factfinder’s verdict clearly wrong and
manifestly unjust.  Watson v. State, 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006).

We have already outlined the evidence supporting
the verdict.  The evidence to the contrary is primarily that these deputies
were dressed in black and there was testimony from at least one of them that
Ruffin was probably unable to see them in the dark.  There is no testimony that
any of the officers on the scene identified himself or herself as a law
enforcement officer or announced that law enforcement officers were present.  (E.g.,
“This is the police.  Come out with your hands up.”).

We acknowledge that the State’s evidence on this
issue cannot be characterized as overwhelming.  Nevertheless, we cannot say
that the supporting evidence is so weak or that conflicting evidence is so
strong as to render the factfinder’s verdict clearly wrong and manifestly
unjust.  See Flores, 164 S.W.3d at 437; see also Watson, 204
S.W.3d. at 414-15.  Accordingly, we overrule Ruffin’s third issue.

We affirm the judgments.

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed August 8, 2007

Publish

[CR25]









[1]
              Each indictment alleges in
pertinent part that Ruffin “did then and there intentionally or knowingly
threaten [the complainant] with imminent bodily injury by firing gunshots, and
did then and there use or exhibit a deadly weapon, to-wit: a firearm, during
the commission of said assault, and the defendant did then and there know that
[the complainant] was then and there a public servant  .  .  .  and that [the
complainant] was then and there lawfully discharging an official duty.”





[2]
              Those complainants are
Deputies Helms, Morgan, and Blakely.  Although Ruffin purports to challenge the
legal sufficiency of the evidence to support his conviction in trial court
cause no. 17804 (aggravated assault of Deputy Medford), he did not perfect an
appeal from that conviction.





[3]
              The Court of Criminal Appeals
affirmed the San Antonio Court’s legal sufficiency analysis but reversed on
double jeopardy grounds.  Manrique v. State, 994 S.W.2d 640, 642-43
(Tex. Crim. App. 1999).  As the Court of Criminal Appeals observed, “The
appellant was trying to ‘light up’ a house that contained more than four
people, and he and his companion fired at least 26 shots.  It seems reasonable
to 

conclude that more than one unknown person could have been the
objects of these murderous acts.”  Id.