

# IN THE
# TENTH COURT OF APPEALS

### Nos. 10-06-00215-CR, 10-06-00216-CR, 10-06-00217-CR, 10-06-00218-CR, 10-06-00219-CR, 10-06-00220-CR, 10-06-00221-CR, and 10-06-00222-CR

**STEPHEN RUFFIN,**

                **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                **Appellee**

**From the 52nd District Court
Coryell County, Texas
Trial Court Nos. 17796, 17797, 17798, 17799,
17800, 17801, 17802, and 17803**

## OPINION ON REMAND

On original submission, we affirmed Stephen Ruffin's convictions for aggravated assault on a public servant and found that expert testimony of a mental abnormality offered to negate the *mens rea* element was properly excluded because Ruffin was neither prosecuted for homicide nor pursuing an insanity defense. *See Ruffin v. State*, 234 S.W.3d 224 (Tex. App.—Waco 2007, pet. granted). The Court of Criminal Appeals

reversed, finding the expert testimony relevant, and remanded for a Rule 403 analysis and a harm analysis if applicable. *See Ruffin v. State*, 270 S.W.3d 586, 595-97 (Tex. Crim. App. 2008). We reverse and remand.

## ANALYSIS

Ruffin was charged with shooting at officers during a standoff on his property. At trial, he sought to admit expert testimony from Dr. William Carter to show that he suffered from a mental abnormality and did not know he was shooting at police officers. The trial court not only excluded the testimony because Ruffin had not raised an insanity defense and was not being prosecuted for homicide, but found: "[U]nder 403 it would be more confusing to the jury because they would intend to interpret it as an insanity defense which has not been raised." Ruffin contends that the trial court failed to explain why the evidence was more prejudicial than probative and "simply invoked Rule 403 in support of its belief that, as matter of law, [] Ruffin should not have been permitted to offer mental impairment evidence to negate *mens rea* because to do so was inherently confusing."

We agree that the trial court's ruling is based on an erroneous conclusion. *See Ruffin*, 270 S.W.3d at 597. Nevertheless, we must uphold the trial court's ruling if it is "correct under any theory of law applicable to the case," "even if the trial court gave the wrong reason for its ruling." *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). We, therefore, proceed with our Rule 403 analysis.

Under Rule 403, relevant evidence may be excluded where its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. When conducting a Rule 403 analysis, the trial court must balance: (1) the inherent probative force of the proffered item of evidence; (2) the proponent's need for that evidence; (3) any tendency of the evidence to suggest decision on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main issues; (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *Newton v. State*, No. 10-06-00160-CR, 2009 Tex. App. LEXIS 6534, at *9-10 (Tex. App.—Waco Aug. 19, 2009, no pet. h.).

Carter opined that Ruffin suffers from "major depression with psychotic features," including "considerable irrationality," delusions, paranoia, and "lack of contact with reality." He explained "delusional thinking" to mean "beliefs that aren't based in reality," but a delusional person often believes that the delusions are true. Ruffin believed he was communicating with aliens and was an heir to the English throne. Carter further explained that a paranoid person believes that "people are out to get him" and is suspicious and mistrustful. According to Carter, Ruffin "interprets what [people] say and do according to his irrational or paranoid thinking, so his response to them is going to be based on his own irrationality as opposed to the other person's more rational state of being." He reviewed the recording of Ruffin's conversation with the police negotiator, whom Ruffin believed was a doctor. Carter

believed that Ruffin was paranoid, irrational, hearing and seeing things, and unaware of the affect of his behavior on others on the night of the offense. He opined that Ruffin's condition "diminished his capacity to make rational judgments."

Several of Ruffin's friends and family members testified to his mental state. They testified that Ruffin was obsessed with the color orange, burned his mother's paintings because they contained other colors, talked to the television and a cigarette lighter, removed electrical appliances from the home because they were "bugged," wore a t-shirt with aluminum foil taped to it because he was receiving signals from a tower, cut his friend's hand when the friend failed to say that orange was his favorite color, believed he was receiving secret messages from the television, fired a doctor when his family tried to seek help, refused to eat his mother's food because he believed she was poisoning him, separated a photograph of his mother and father, believed that women were "getting rid of the men," promised his nephew a thousand orange helicopters from his kingdom, believed he had a castle in Scotland, and believed he was an heir to the thrown. Deputy Carol Brown, Ruffin's friend, was present during the standoff and testified that Ruffin said some unusual things and stated that he was declaring martial law. Witnesses described Ruffin as "off in left field," having "lost his rocker," and in his "own world."

Ruffin testified that he first noticed a problem when he drove through town and saw that it was a "hippy town" painted in "psychedelic colors." He explained that people on television were talking to him and ridiculing him. He heard two voices in his head: one female and Christian, the other male and Muslim. The voices liked each

other, but not Ruffin. He covered his head with aluminum foil to escape the voices. He believed that the colors blue and orange were a "mafia plan." He recalled cutting his friend's hand. He believed that his mother murdered his father and brother and thought the Christian girls were killing the men. He asked the Sheriff's Department for a badge because he believed he was the "supreme commander" of the world.

On the night of the offense, Ruffin thought he was being hunted by Muslims. He had heard voices laughing at him and thought someone was stealing from him. When Brown called out to him, he told her to go away, accused her of trespassing, and fired some shots. At some point, he heard a helicopter and believed it was an Apache helicopter, with missiles, being flown by his sister. He thought Muslims were in the bushes, so he fired in the direction of the voices. He believed there were hundreds of Muslims. In the morning, he was surprised to see police vehicles in front of his house. After his arrest, Ruffin believed that the girls in the jail were "witches" walking around with black teeth and laughing.

As the Court of Criminal Appeals noted, "The testimony proffered by Dr. Carter in this case is clearly relevant to the issue of whether appellant intended to shoot at police officers during the standoff or whether, because of a mental disease and the delusions that he suffered as a result of that disease, he believed that he was shooting at Muslims or some other figment of his mind." *Ruffin*, 270 S.W.3d at 596. Because Carter's testimony was admissible to rebut the *mens rea* element of aggravated assault on a public servant, the inherent probative value of the evidence was great.

We are not persuaded that the probative value of this evidence is minimized by the lay testimony admitted at trial:

> Although the trial judge permitted numerous lay witnesses, including appellant himself, to testify to "observational evidence" concerning appellant's mental breakdown and delusions, *that evidence was never put into a mental-disease context or its psychological significance explained*.

*Ruffin*, 270 S.W.3d at 596-97 (emphasis added). Carter's testimony was needed to perform this very function.

While the testimony would certainly be prejudicial to the State's case, it would not be *unfairly* so in proportion to its probative value. *See Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002) ("To violate Rule 403, it is not enough that the evidence is 'prejudicial' - it must be *unfairly* prejudicial."). Rather than suggesting a decision on an improper basis, Carter's testimony would place the evidence of Ruffin's mental state in the proper context and allow the jury to properly evaluate the probative force of the evidence. The evidence goes to the heart of the main issue in the case: whether Ruffin committed the charged offense. We cannot say that the jury would have been confused, distracted, or misled by this evidence. *See Ruffin*, 270 S.W.3d at 595 (Expressing "confidence that our Texas judges and juries are sufficiently sophisticated to evaluate expert mental-disease testimony in the context of rebutting *mens rea* just as they are in evaluating an insanity or mental-retardation claim.").

Finally, the record does not suggest that the testimony would cause "undue delay" or "needless presentation of cumulative evidence." Carter's testimony is not cumulative of other testimony at trial. The bill of exception consumed approximately

nineteen pages of the record, and Carter's testimony at the punishment phase of trial consumed about forty pages of the record.

In summary, the above factors favor admission of the evidence. The trial court abused its discretion by excluding Ruffin's proffered expert testimony under Rule 403.

We now address whether Ruffin suffered harm as a result of the exclusion of his evidence. The State argues that harm should be evaluated for non-constitutional error. Citing *Walters v. State*, 247 S.W.3d 204 (Tex. Crim. App. 2007), Ruffin contends that harm should be evaluated for constitutional error:

> The erroneous exclusion of evidence offered under the rules of evidence generally constitutes non-constitutional error and is reviewed under Rule 44.2(b). The exception is when erroneously excluded evidence offered by the criminal defendant "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." Exclusion of evidence might rise to the level of a constitutional violation if: (1) a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense; or (2) *a trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense*. In such a case, Rule 44.2(a), the standard for constitutional errors, would apply.

*Walters*, 247 S.W.3d at 219 (emphasis added).

Texas does not recognize diminished capacity as an affirmative defense *i.e.*, a lesser form of the defense of insanity. *Jackson v. State*, 160 S.W.3d 568, 573 (Tex. Crim. App. 2005). It is "simply a failure-of-proof defense in which the defendant claims that the State failed to prove that the defendant had the required state of mind at the time of the offense." *Id*. The standard for non-constitutional error applies. *See Morales v. State*, 32 S.W.3d 862, 866-67 (Tex. Crim. App. 2000) (remanding case to the First Court of

Appeals to evaluate the exclusion of defendant's expert testimony for non-constitutional error).

When evaluating harm from non-constitutional error flowing from the exclusion of relevant evidence, we examine the record as a whole, and if we are fairly assured that the error did not influence the jury or had but a slight effect, we conclude that the error was harmless. *Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005). Any error must be disregarded unless it affected Ruffin's substantial rights. *See* TEX. R. APP. P. 44.2(b).

The State argues that Ruffin's substantial rights were not affected because he was able to present similar testimony from other witnesses, the record contains a wealth of evidence to support the verdict,[1] and the jury must have considered Ruffin's diminished mental state, having assessed ten years in prison for each count.[2]

Whether Ruffin knew he was shooting at law enforcement officers was central to the case. The lay testimony of Ruffin's mental state amounts to "observational evidence" that was "never put into a mental-disease context or its psychological significance explained." *Ruffin*, 270 S.W.3d at 597. The jury did not have the

---

[1] On original submission, we noted several facts supporting the verdict: (1) Ruffin had known Brown for years, knew that she was a law enforcement officer, and acknowledged her on the night of the offense; (2) some officers had activated the overhead lights on their patrol cars at the time of their arrival at the scene; (3) the headlights of some patrol cars illuminated the law enforcement markings on other vehicles, as well as officers in uniform; and (4) at some point during the night, Ruffin fired shots at both the officers and a police helicopter. *See Ruffin v. State*, 234 S.W.3d 224, 227-28 (Tex. App.—Waco 2007, pet. granted).

[2] Citing *Peters v. State*, 31 S.W.3d 704 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) and *Wilkerson v. State*, 766 S.W.2d 795 (Tex. App.—Tyler 1987, writ ref'd), Ruffin contends that exclusion of Carter's testimony was harmful. Because these cases involve testimony excluded at the punishment phase, they are not particularly helpful.

opportunity to hear Carter's testimony, which was relevant to his failure-of-proof defense, and to evaluate its credibility in addition to other evidence presented at trial.

In *Morales v. State*, No. 01-99-00457-CR, 2001 Tex. App. LEXIS 3219 (Tex. App.—Houston [1st Dist.] May 17, 2001, no pet.) (not designated for publication), Morales was charged with felony driving while intoxicated. *See Morales*, 2001 Tex. App. LEXIS 3219, at *1. Morales called an acquaintance who testified that he and Morales had four or five beers several hours before the offense; thus, he did not believe that Morales was intoxicated. *Id*. at *7. Morales sought to introduce expert testimony to show that he "would not have been mentally or physically impaired because of the alcohol burn-off rate." *Id*. When conducting its harm analysis, the First Court noted that the sole issue at trial was whether Morales was driving while intoxicated. *See id*. at *9. Morales's "primary defense was that he could not have been driving while intoxicated because such a long period of time had elapsed since his last drink." *Id*. The expert's testimony would have "substantially bolstered" that defense. *Id*. at *9-10. Although the First Court did not believe that Morales would have been acquitted "but for the trial court's error," it could not say with "fair assurance that the excluded testimony would have had no effect, or but slight effect, on the jury's consideration of [Morales's] defense." *Id*. at *10. Morales was harmed because the "jury was not given an opportunity to hear testimony relevant to [his] defense and assess its credibility along with the other evidence in the case." *Id*.

As in *Morales*, we do not have a fair assurance that the exclusion of Carter's testimony did not influence the jury or had but a slight effect. Because we conclude that Ruffin was harmed by this error, we reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
    (Chief Justice Gray dissenting with note)*
Reversed and remanded
Opinion delivered and filed September 23, 2009
Do not publish
[CRPM]

*     (Chief Justice Gray dissents. A separate opinion will not issue. The admissibility of the evidence is dependent on a balancing test administered by the trial court and even if erroneously excluded must be harmful. Based on the precedent of this Court, I cannot conclude the trial court erred in his decision to exclude the evidence or that, if erroneous, the exclusion was harmful.)